08-1830-cr
United States v. Pietro Polouizzi

## UNITED STATES COURT OF APPEALS

### FOR THE SECOND CIRCUIT

————————————

August Term, 2008

(Argued: January 9, 2009                                           Decided: April 24, 2009)

Docket Nos. 08-1830-cr(L), 08-1887-cr(XAP)

————————————

UNITED STATES OF AMERICA,

*Appellee-Cross Appellant*,

—v.—

PIETRO POLOUIZZI, also known as Peter Polouizzi,
also known as Peter Pietro-Polouicci, also known as Peter Polizzi,

*Defendant-Appellant-Cross Appellee*.

————————————

B e f o r e :

LEVAL, KATZMANN, and RAGGI, *Circuit Judges*.

————————————

Appeal from a judgment entered April 9, 2008, in the United States District Court for the

Eastern District of New York (Weinstein, *J.*), convicting defendant of eleven counts of

possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  Cross-appeal from

an order and judgment entered April 9, 2008, granting defendant's motion pursuant to Federal

Rule of Criminal Procedure 33 for a new trial on twelve counts charging receipt of child

pornography, in violation of 18 U.S.C. § 2252(a)(2).  Because the defendant's possession as

charged in the indictment constituted a single unit of prosecution and because the district court

erred by granting defendant's motion for a new trial on the counts charging receipt of child pornography, we vacate the April 9, 2008 order of the district court granting defendant's motion for a new trial and remand this case to the district court to vacate all but one of the possession convictions and for further proceedings consistent with this opinion.

————————

DAVID M. SHAPIRO, American Civil Liberties Union Foundation, Washington, DC (Jeffrey L. Fisher, Davis Wright Tremaine LLP, Seattle, WA and Mitchell J. Dinnerstein, *on the brief*), *for Defendant-Appellant Cross-Appellee*.

ALLEN L. BODE, Assistant United States Attorney (Peter A. Norling and Andrea Goldbarg, Assistant United States Attorneys, *on the brief*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee Cross-Appellant*.

A. Stephen Hut, Wilmer Cutler Pickering Hale & Dorr, LLP, Washington, DC, Adam J. Hornstine, Wilmer Cutler Pickering Hale & Dorr, LLP, Washington, DC, Richard D. Willstatter, Green & Willstatter, White Plains, NY, and Peter Goldberger, Families Against Mandatory Minimums Foundation, Ardmore, PA, *for Amici Curiae* the National Association of Criminal Defense Lawyers and Families Against Mandatory Minimums Foundation, *in support of Defendant-Appellant-Cross-Appellee*.

Colleen P. Cassidy, Federal Defenders of New York, Inc., New York, NY, *for Amicus Curiae* Federal Defenders of New York, Inc.

————————

KATZMANN, *Circuit Judge*:

This case calls upon us to decide whether a collection of child pornography is a single unit of prosecution under 18 U.S.C. § 2252(a)(4)(B) such that the possession of a collection cannot support multiple counts of conviction. Moreover, we are called upon to address whether

the district court's self-described failure to exercise its discretion to inform the jury of an applicable mandatory minimum sentence constitutes a manifest injustice requiring a new trial.

Defendant-appellant and cross-appellee Peter Polizzi[1] was tried before a jury in the United States District Court for the Eastern District of New York (Weinstein, *J.*), on twelve counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and eleven counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Polizzi sought, but the court refused, to have the jury informed of the five-year mandatory minimum sentence applicable to a conviction of receipt under § 2252(a)(2). At trial, Polizzi put forth an insanity defense, predicated largely on his assertion of repeated and severe sexual abuse as a child. The jury rejected this defense and found him guilty of all counts. After the jury returned its verdict, the district court informed the jurors of the five-year mandatory minimum sentence applicable to the twelve receipt convictions; on inquiry from the court, some jurors expressed dissatisfaction with this punishment, and some suggested that they might have voted differently had they been aware that the verdict carried a mandatory minimum period of incarceration. Thereafter, the district court granted Polizzi's motion, pursuant to Federal Rule of Criminal Procedure 33, for a new trial on the twelve receipt counts, concluding that it had erred in refusing to advise the jury of the applicable mandatory minimum sentence, and entered a judgment of conviction on the eleven possession counts sentencing Polizzi to eleven concurrent terms of one year and a day's imprisonment, ten years of supervised release, a $50,000 fine, and $1100 in special assessments.

Polizzi appeals from the judgment entered April 9, 2008, convicting him of eleven counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), arguing that (1)

---

[1] The defendant has requested that he be referred to as Peter Polizzi.

the district court abused its discretion by admitting into evidence certain images of child pornography, (2) the jury instruction on the insanity defense constituted plain error, and (3) his multiple convictions for possession violate the Double Jeopardy Clause. Under 18 U.S.C. § 3731, the government cross-appeals from the district court's April 9, 2008 order granting Polizzi's motion pursuant to Federal Rule of Criminal Procedure 33 for a new trial on twelve counts charging receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Because we find that the district court erred by entering multiple convictions for possession and by granting a new trial on the receipt counts, we vacate the April 9, 2008 order granting defendant's motion for a new trial and remand this case to the district court to vacate all but one of the possession convictions and for further proceedings consistent with this opinion.

## BACKGROUND

A. The Investigation and Indictment

In early 2005, FBI agents and Suffolk County Police Department Officers conducted an investigation into an online "private child porn club" called "Hardcore" that, for a fee, gave members access to images of child pornography. An access log for the "Hardcore" website recorded 900,000 Internet Protocol ("IP") addresses, representing approximately 1900 unique visitors, during a ten-day period in March 2005. One of the IP addresses included in the log was traced to Polizzi; the log indicated that Polizzi's IP address downloaded a number of images from the Hardcore website on March 28, 2005. Based on this information, the FBI obtained a search warrant for Polizzi's home seeking computer equipment and evidence related to the possession of child pornography.

4

On November 16, 2005, the FBI and local law enforcement agents arrived at Polizzi's home to execute the warrant. Polizzi cooperated with the agents, leading them to computers in two rooms on the second floor of the detached garage, which were secured with multiple locks to which Polizzi alone had the keys. As he led the agents up the stairs, Polizzi told the officers: "[I]t's me, I looked at the pictures of the children. The pictures of the children are upstairs." Then, he asked the officers, "What are we going to do about it?"

Polizzi then unlocked the rooms and showed the agents the computers. In the first room, described as the "balloon room," the officers found two external hard drives, referred to at trial and herein as "External 1" and "External 2." In the second room, described as the "music room," the officers found a third external hard drive, referred to at trial and herein as "External 3." A total of 5000 digital images and several videos of child pornography were found on the three external hard drives.

Thereafter, Polizzi was read *Miranda* warnings and signed two forms stating that he waived his rights and was willing to talk without an attorney present. Polizzi then gave a statement, recorded by the agents and signed by Polizzi, stating in part:

> Some time in February or March, 2005, I received an e-mail in my AOL e-mail account, [] inviting me to join a website called 'Hard Lovers.' It was $79 or $89 to join and I had to use my credit card to join. I used my Master Card from Citibank; it's in my name. . . .
> After I joined, I would visit ever[y] couple of days. After I joined, I knew it was a child pornography website. I downloaded pictures and videos from this website. I keep the pictures on my external hard drive . . . that I bought new about six months ago. I have another external hard drive that I used and transferred everything over from an older external drive that I also bought new.
> The computer I used to go to, the . . . hard lovers website I had custom made at a computer store . . . about two years ago. It was the black tower where I pointed to the Detective Forrestal at my desk. I'm not sure how [many] child pornography pictures I have but I have a lot. I know I'm

5

a member of the site now and I downloaded this morning. . . . I know I have of a lot. I know I'm a member of the site now and I have Red [sic] something, I don't remember exactly, it's in my favorites. I used the same credit card number, the Citi Master Card to join. I don't send them out, it's only private. The different passwords of the websites are in my AOL e-mail that I have so I know what they are.

I'm the only person that uses my computer. I keep it in a locked room upstairs that I only have access to. I have read the above . . . and I swear that . . . it is all true.

Polizzi was arrested and charged with twelve counts of receipt and twelve counts of possession of seventeen different photos and videos downloaded from the Hardcore website.

The receipt counts (Counts 1 through 12) charged Polizzi with receiving illicit images on four different dates. Specifically, Polizzi was charged with receiving: two illicit images on February 20, 2005; two illicit images on March 5, 2005; four illicit images on March 16, 2005; and four illicit images on March 20, 2005. All of the images that he was alleged to have received were stored on External 3.

The possession counts (Counts 13 through 24) charged Polizzi with possessing on November 16, 2005, twelve illicit images on three different external hard drives. One of the twelve counts of possession – Count 13 – was dismissed on the government's motion prior to trial. The image charged in Count 14 was stored External 1; the images charged in Counts 15–17 were stored on External 2; and the images charged in Counts 18–24 were stored on External 3. None of the image file or video files charged in Counts 14–17 were the subject of a receipt count; each image charged in Counts 18–24 also was the subject of a receipt count. Specifically, Counts 18 and 3 were based on the same image, as were Counts 19 and 4, Counts 20 and 1, Counts 21 and 11, Counts 22 and 12, Counts 23 and 7, and Counts 24 and 8.

B.  Pre-Trial Proceedings

The parties submitted proposed jury charges prior to trial.  Regarding the insanity defense, both parties sought to have the court instruct the jury, in substance, that it was the defendant's burden to show, by clear and convincing evidence, that at the time Polizzi committed the acts constituting the crimes charged he was not able to appreciate the nature and quality or wrongfulness of those acts, as a result of a severe mental disease or defect.  The government proposed to define wrongfulness as "contrary to public morality, as well as contrary to law." Polizzi, in contrast, sought to leave the term undefined.  After hearing arguments and receiving memoranda on the competing proposals, the court distributed to the parties its proposed instruction on the insanity defense.  It provided, in relevant part, that "'[w]rongfulness' means in this context 'unlawfulness.'"  The court asked the parties if either had an objection to the proposed charge.  Polizzi's counsel responded: "Your Honor, I do not have any objection at this time."  The government responded similarly.  At the subsequent charging conference, Polizzi's counsel again did not object to the court's proposed definition of wrongfulness.   Ultimately, the charge given to the jury conformed materially to the instruction distributed by the court prior to trail.

After receiving the parties' requests to charge, the district court issued an order on September 6, 2007, inquiring: "Does the defendant wish the jury to be informed of the statutory mandatory minimum (five years) and maximum (twenty years) sentence?  If so, is it appropriate to inform the jury, and at what stage?"  The government argued that an unpublished, non-precedential summary order issued by this court in *United States v. Pabon-Cruz*, 391 F.3d 86 (2d Cir. 2004), controlled the question posed by the court's September 6, 2007 order and moved *in*

*limine* for an order prohibiting counsel from mentioning "any applicable mandatory minimum or maximum which applies or the consequences of a verdict of not guilty by reason of insanity." Polizzi requested that the court inform the jury of the statutory minimum and maximum sentences at a time that the court deemed appropriate. After receiving these applications, the court announced that it would not inform the jury of the mandatory minimum or maximum.

At a pretrial conference on September 10, 2007, the government indicated that it would seek to introduce at trial: (1) the images and videos containing child pornography that Polizzi was charged with receiving, possessing, or both, and (2) three to four website pages with thumbnail-sized images of child pornography. The government explained its intention to present the images by means of a PowerPoint presentation that would show each image for no more than a few seconds. Polizzi's counsel sought to stipulate that the images charged in the indictment were child pornography and to exclude the images under Federal Rule of Evidence 403. The district court permitted the government to introduce the images despite Polizzi's offer to stipulate to their nature.

C. Trial

For our purposes, a brief summary of the trial testimony and evidence is sufficient. Further details of the trial are recounted in the district court's thorough opinion. *See United States v. Polizzi*, 549 F. Supp. 2d 308, 331–39 (E.D.N.Y. 2008).

The government's direct case consisted primarily of the testimony of Detective Rory Forrestal of the Suffolk County Police Department and of the files found on Polizzi's external hard drives. Detective Forrestal had been involved in the investigation of the Hardcore website

8

and the search of Polizzi's home and had reviewed Polizzi's computers and external hard drives. He testified regarding (1) the many steps required to subscribe to the Hardcore website and the communications he received as an undercover subscriber to the website; (2) the evidence obtained from the internet service provider that hosted the Hardcore website, including access logs and the website's content; (3) the execution of the search warrant at Polizzi's house, including Polizzi's statements and conduct during the search; and (4) the evidence seized at Polizzi's house, including files found on his computers and external hard drives.

Each image or video of child pornography identified specifically in the indictment was introduced via Detective Forrestal's testimony. For each, the image would be shown to the jury for a few seconds, after which Detective Forrestal would describe (1) the date the image was downloaded or possessed; (2) the IP address from which the image was downloaded; (3) the file path for the drive on which the image file was found; (4) the identity and circumstances of the child depicted; and (5) the date Polizzi last accessed the file. Short segments of the three videos charged in the indictment were played for the jury, and Forrestal testified that the un-played portion of each video was similar to the segment played.

As described by the district court, "the only contested issue [at trial] was Polizzi's affirmative defense of legal insanity." *Polizzi*, 549 F. Supp. 2d at 330. In support of this affirmative defense, the defense called, among other witnesses, Polizzi, his son Jack, Dr. Lisa Cohen, a clinical psychologist, and Dr. Eric Goldsmith, a forensic psychiatrist.

Polizzi testified about his childhood in Italy, including incidents of sexual abuse by his uncle, a family friend, and two police officers, stating he was too ashamed and afraid to tell anyone about these incidents until after he had begun psychological treatment following his arrest

9

in this case. Polizzi testified further that he was horrified and shocked by the images of child pornography he viewed on the internet and that seeing the images reminded him of his own abuse as a child. He explained that (1) he looked at the images because he believed he might be able to find a photograph of his own abuse, and (2) he downloaded the pictures to stop the abuse of other children and was collecting the images to turn over to the police. Polizzi testified that although he understood that the abuse portrayed in the photographs was wrong, he believed the images were legal because they were available on the internet. Despite his avowed intention to help law enforcement by collecting these images, Polizzi never voluntarily informed law enforcement or anyone else about his collection. He explained that he did not report his collection because he could not trust police officers, given his experiences with the police in Italy, and because he was ashamed to reveal his own abuse.

Dr. Cohen testified that she concluded that Polizzi had significant cognitive impairment and obsessive compulsive disorder characterized by severe hoarding. Dr. Goldsmith testified that Polizzi had a severe obsessive compulsive pathology and post-traumatic stress disorder, the latter drawing him to seek out child pornography in hopes that he might find a picture of himself. In rebuttal, the government offered the testimony of Dr. Naftali Berrill, the forensic psychologist assigned to evaluate Polizzi for pretrial services treatment. Dr. Berrill testified that he met with Polizzi on numerous occasions, but that Polizzi never told him of his abuse as a child. He further testified that although he had diagnosed Polizzi as having an anxiety disorder, he did not believe Polizzi suffered from this at the time he received and possessed the child pornography. Even if he had been suffering from an anxiety disorder at that time, it was Dr. Berrill's opinion that such a disorder would not render Polizzi unable to appreciate the wrongfulness of his acts. Dr. Berrill

testified that he disagreed with Dr. Goldsmith's diagnosis that Polizzi suffered from post-traumatic stress disorder, noting that the criminal behavior here – seeking out reminders of the original trauma and receiving and possessing images over a number of years – was not typical criminal behavior for individuals with that disorder.

D. Jury Verdict

The district court described that "[d]uring jury deliberations, it was evident . . . that [the jury] rather quickly decided the issue of guilt," but it took the jury several days to "[d]etermin[e] whether Polizzi had carried his burden of proving legal insanity . . . ." *Polizzi*, 549 F. Supp. 2d at 339. Ultimately, the jury rejected that defense and, on October 5, 2007, returned a verdict finding him guilty on all twelve counts of receipt and all eleven counts of possession.

After the verdict was announced, the district court addressed the jury further:

> THE COURT: You [the jury] are discharged. However, stay there for a moment, please.
>
> I know this has been a difficult case for you, and some of you are nodding, and you don't have to answer the questions I'm going to put to you, but it might be helpful. Just answer, if you want to answer as to yourself, not as to what anybody else said, because everybody is entitled to privacy.
>
> Now, the Supreme Court of the United States has suggested that for constitutional reasons the juries participate much more heavily in the sentencing, although the sentencing does not suggest in any way how you should decide. As I told you, in considering your verdict, you should not consider that. I will do the sentencing, not you. You all recall that?
>
> However, because these are somewhat difficult cases, and they do involve to some extent the morality and the views of the community, it might be helpful, if you wish, to indicate what you think under these circumstances that you have heard here, the penalty for a person like this defendant might be, in terms of incarceration or other punitive aspects.

11

Do you have any view, juror one?

Juror One answered "No," as did Jurors Two through Eight. Juror Nine's response, if any, was not recorded. Juror Ten answered "Yes, I do." This colloquy followed:

THE COURT: What's your view?

JUROR NO. 10: My view is that if it is at all possible - and I don't know if it is - I see no useful purpose to have Mr. Polizzi confined. I believe that there should be an alternative, if possible, other than confinement.

THE COURT: What would that alternative be?

JUROR NO. 10: Treatment.

THE COURT: Compulsory treatment?

JUROR NO. 10: Oh, absolutely.

THE COURT: Juror eleven?

JUROR NO. 11: I agree with [Juror Ten].

Juror Twelve declined to answer the court's question. The court went on to explain the concept of jury nullification and asked:

THE COURT: . . . Had you known that the penalty was five to 20 years, a minimum of five, maximum of 20, probably concurrent, not times 20, but for the total, would that have affected the verdict of any of you, raise your hands?

MR. BODE [for the government]: I object, your Honor.

JUROR NO. 9: Yes, I also feel that incarceration would not serve in this case. I think the gentleman should receive treatment, compulsory, but he should definitely receive treatment. I don't think justice is served for incarceration.

THE COURT: Would your verdict have been affected if you knew that there was a minimum of five years imprisonment[?]

JUROR NO. 9: Yes.

12

THE COURT: How would it have been affected?

JUROR NO. 9: Under all the circumstances, I would have probably gone not guilty by reason of insanity.

THE COURT: Anyone else?

JUROR NO. 2: I would have done the same.

THE COURT: You would have found him not guilty, if you knew what the total punishment was.

Anyone else wish to speak? Juror eleven?

JUROR NO. 11: I would not. I would have found him [not] guilty by reason of insanity.

THE COURT: You would have nullified, if you knew what the punishment was.

. . .

JUROR NO. 7: I also believe that Mr. Polizzi should not be incarcerated. I believe that mental health treatment should be the proper verdict for Mr. Polizzi.

The defendant was remanded to await sentencing.


E. New Trial Motion

On February 5, 2008, Polizzi moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure and for dismissal pursuant to Rule 29. In relevant part, he argued that a new trial was required because the district court refused to inform the jury of the applicable mandatory minimum sentence, despite having discretion to do so.

On April 1, 2008, the district court granted Polizzi's Rule 33 motion for a new trial on the receipt counts on the ground that it had erred in refusing to advise the jury of the mandatory

13

minimum sentence for those counts. The district court's opinion implies that error was committed in the trial in two ways.

First, the district court explained that the refusal to instruct the jury on the mandatory sentence was an error because it denied Polizzi of his Sixth Amendment jury right. *Polizzi*, 549 F. Supp. 2d at 443. While noting that Supreme Court and Circuit precedent suggests that the Sixth Amendment does not encompass a right to have the jury instructed on mandatory minimums, *id.* at 445–46, the district court concluded that Polizzi had a Sixth Amendment right to be tried by a jury informed of the mandatory sentence because a jury at the time of the founding would have been aware of such information. Conducting a lengthy historical review, *id.* at 405–20, the district court concluded that

> the petit juries of 1791 would have been aware of any harsh sentence imposed mandatorily upon a finding of guilt of a particular crime. It is equally apparent that a jury so apprised would have been expected to deliver a verdict of not guilty or of guilty of a lesser crime had it believed the punishment excessive for the crime actually charged and proved.

*Id.* at 405.

Second, the district court explained that it erred because, believing erroneously that it had no discretion to instruct the jury about the mandatory minimum sentence, it failed to exercise its discretion to give such an instruction. *Id.* at 448.

Based on its post-verdict colloquy with the jurors, the district court concluded that "it is apparent that a properly informed and rational jury would likely have deadlocked on the receiving counts or found Polizzi not guilty by reason of insanity." *Id.* The district court concluded, therefore, that the error prejudiced Polizzi and that the interests of justice required a new trial on the receipt counts. *Id.*

14

Polizzi makes three arguments on appeal. First, he argues that the district court abused its discretion by admitting into evidence images of child pornography. Second, he argues that the jury instruction on the insanity defense, defining wrongfulness as unlawfulness, was plain error. And third, he argues that all but one of his possession convictions must be vacated because his conviction on eleven counts of possession violates the Double Jeopardy Clause. The government, on cross-appeal, argues that the district court abused its discretion by granting Polizzi's motion for a new trial on the twelve counts of receipt because the decision was premised on an erroneous belief that it had discretion to instruct the jury of the applicable mandatory minimum.

A. Admission of Images of Child Pornography

Polizzi argues that the district court abused its discretion by admitting images and videos of child pornography because the probative value of such evidence was substantially outweighed by the risk of unfair prejudice to Polizzi. *See* Fed. R. Evid. 403. Specifically, he contends that the images were not probative of a disputed fact because he did not contest that he had received or possessed child pornography. Further, he argues that the risk of unfair prejudice caused by the images was particularly high because he was pursuing an insanity defense.

We review a district court's balancing under Rule 403 for abuse of discretion. The "decision to admit or exclude evidence will not be overturned unless we conclude that the court acted arbitrarily or irrationally." *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994). "In limited circumstances, the Government can be required to accept a stipulation by the defendant to

a particular fact, rather than present evidence proving the stipulated fact." *United States v. Velazquez*, 246 F.3d 204, 211 (2d Cir. 2001); *see also Old Chief v. United States*, 519 U.S. 172, 190–92 (1997). We do not believe that such circumstances existed in this case.

Although Polizzi did not contest that the images he received and possessed constituted child pornography, the stipulation was not an adequate substitute for the evidence offered. The specific nature and content of the images were relevant to the jury's evaluation of Polizzi's claim that he did not understand the wrongfulness of receiving and possessing those images. Indeed, the Supreme Court has noted specifically that the government generally has a right to present evidence, rather than accept a stipulation, to establish the "human significance" of the fact and "to implicate the law's moral underpinnings." *Old Chief*, 519 U.S. at 187–88. Moreover, the risk of unfair prejudice was minimized by the mode of presentation. In these circumstances, we find no abuse of discretion in the district court's decision to admit these images.[2]

## B. Insanity Defense Instruction

As discussed above, the parties disagreed over how to define "wrongfulness" in the jury instructions regarding Polizzi's insanity defense. Prior to trial, the district court proposed to the parties that it would define wrongfulness as "unlawfulness." Neither party objected to this definition when proposed prior to trial, during the charging conference, or when the jury was charged. Nonetheless, Polizzi argues on appeal that the district court erred by defining wrongfulness as unlawfulness.

We decline to consider the merits of this argument because Polizzi waived his right to

---

[2] We have no occasion to consider and thus express no views as to whether the district court would have erred had it accepted the defendant's stipulation and excluded the images.

16

appeal this issue. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (distinguishing

"forfeiture" of a claim, which results from a failure to assert the claim in a timely fashion, and

which does not prevent an appellate court from reviewing the claim for plain error, from

"waiver," which is the "intentional relinquishment or abandonment of a known right," and which

permanently extinguishes the right to raise the claim). Faced with the parties' incompatible

positions regarding the proposed definition of unlawfulness, the district court proposed a third

option. Presented with this option, Polizzi indicated that the instruction was satisfactory. In

these circumstances, by agreeing that the instruction was satisfactory, Polizzi waived the right to

challenge the instruction on appeal.

## C. Double Jeopardy Claims

Polizzi argues that ten of his convictions for possession must be vacated because all but

one of his possession convictions violate the Double Jeopardy Clause. He contends that the

conduct charged in the indictment – possessing a single collection of child pornography on

November 16, 2005 – constitutes only a single violation of 18 U.S.C. § 2252(a)(4)(B). And in

the event that we vacate the new trial order on the receipt counts, Polizzi argues that we must

instruct the district court on remand to enter judgment on a single count of receipt *or* on a single

count of possession.

### 1. Convictions on Multiple Counts of Possession Violate Double Jeopardy Clause

Polizzi argues for the first time on appeal that his multiple convictions for possession

constitute a Double Jeopardy violation. Nonetheless, "[a] plain error that affects substantial

17

rights may be considered even though it was not brought to the [district] court's attention." Fed. R. Crim. P. 52(b); *see United States v. Irving,* 554 F.3d 64, 78 (2d Cir. 2009) (reviewing for plain error a double jeopardy challenge not raised before the district court); *United States v. Savarese*, 404 F.3d 651, 656 (2d Cir. 2005) (same); *United States v. Handakas*, 286 F.3d 92, 97 (2d Cir. 2002) (same), *overruled on other grounds by United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (en banc); *United States v. Gore*, 154 F.3d 34, 41–43 (2d Cir. 1998) (same).

To demonstrate plain error, Polizzi must show: "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *Olano*, 507 U.S. at 732). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 467 (quoting *Olano*, 507 U.S. at 732) (brackets and other internal quotation marks omitted).

The Double Jeopardy Clause of the Fifth Amendment, *inter alia*, "protects against multiple punishments for the same offense." *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (internal quotation marks omitted). "When, as here, the same statutory violation is charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004) (citing *Bell v. United States*, 349 U.S. 81, 83–84 (1955)); *see also United States v. Kerley*, 544 F.3d 172, 178 (2d Cir. 2008).

As charged in the indictment, each of the eleven possession convictions was for, "[o]n or about November 16, 2005, within the Eastern District of New York and elsewhere, . . . knowingly and intentionally possess[ing]" one computer file containing a visual depiction of

18

minors engaged in sexually explicit conduct, the production of which involved such conduct.

Collectively, therefore, the eleven counts were for possession of eleven computer files.

Title 18, section 2252(a) of the United States Code, in relevant part, makes it a crime to

> knowingly possess[] . . . 1 or more books, magazines, periodicals, films,
> video tapes, or other matter which contain any visual depiction . . . if – (i)
> the producing of such visual depiction involves the use of a minor
> engaging in sexually explicit conduct; and (ii) such visual depiction is of
> such conduct.

18 U.S.C. § 2252(a)(4)(B).[3] The statute provides also for an affirmative defense to a charge of

possession under that section if, *inter alia*, the defendant "possessed less than three matters

containing [prohibited images]." *Id.* § 2252(c). Prior to an amendment in 1998, § 2252(a) made

it a crime to "'knowingly possess[] 3 or more books, magazines, periodicals, films, video tapes,

or other matter'" containing child pornography and did not provide an affirmative defense.

*United States v. Dauray*, 215 F.3d 257, 259-60, 263 (2d Cir. 2000) (emphasis omitted) (quoting

18 U.S.C. § 2252(a)(4)(B) (1994)).

The government maintains that each "matter which contain[s]" a prohibited image is a

separate unit of prosecution such that the possession of each such "matter" is a separate violation

of § 2252(a)(4)(B).[4] We disagree. Based on the clear language of the statute, we conclude that

---

[3] Title 18, section 2252A of the United States Code also criminalizes knowingly possessing child pornography. Specifically, that section, in relevant part, makes it a crime to "knowingly possess[] . . . *any* book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography . . . ." 18 U.S.C. § 2252A(a)(5)(B) (emphasis added).

[4] Polizzi was charged with possession on a file-by-file basis – one count for each computer file containing a prohibited image – on the apparent assumption that each such file constitutes a separate "matter" under § 2252(a)(4)(B). On appeal, Polizzi contends that each external hard drive constitutes a single "matter" under the statute, regardless of the number of prohibited images stored on each drive. *See United States v. Lacy*, 119 F.3d 742, 748 (9th Cir. 1997) ("Although both the disks and the GIF files could be viewed as 'containing' the visual

19

Congress intended to subject a person who simultaneously possesses multiple books, magazines, periodicals, films, video tapes, or other matter containing a visual depiction of child pornography to only one conviction under 18 U.S.C. § 2252(a)(4)(B).[5]

The language "1 or more," 18 U.S.C. § 2252(a)(4)(B), indicates that a person commits one violation of the statute by possessing more than one matter containing a visual depiction of child pornography. Thus, unlike the word "any," which "has 'typically been found ambiguous in connection with the allowable unit of prosecution,' for it contemplates the plural, rather than specifying the singular," *United States v. Coiro*, 922 F.2d 1008, 1014 (2d Cir. 1991) (quoting *United States v. Kinsley*, 518 F.2d 665, 668 (8th Cir. 1975)), the phrase "1 or more" specifies the plural. Thus, the plain language of the statute provides that a person who possesses "1 or more" matters containing a prohibited image has violated the statute only once. *See United States v. Kimbrough*, 69 F.3d 723, 730 (5th Cir. 1995) (considering the prior version of § 2252(a)(4)(B) and holding that "the plain language of the statute's requirement that a defendant possess 'three

_____

depiction, we conclude the 'matter' is the physical medium that contains the visual depiction – in this case, the hard drive of Lacy's computer and the disks found in his apartment."); *see also Dauray*, 215 F.3d at 261 (noting that courts have reached varying conclusions on this issue). We need not resolve this question here, however, as our interpretation of § 2252(a)(4)(B) would not permit a defendant in Polizzi's position to be convicted on multiple possession counts under either interpretation.

[5] We note that Polizzi was charged with possessing, on a single date, eleven computer files stored on three hard drives housed in two adjacent rooms in a single premises, his detached garage. Moreover, the government has not maintained, either below or on appeal, that Polizzi's multiple possession convictions under § 2252(a)(4)(B) could be sustained because Polizzi "acquired possession of the [prohibited matters] on different occasions, or that he stored them at different sites." *United States v. Olmeda*, 461 F.3d 271, 280 (2d Cir. 2006) (construing 18 U.S.C. § 922(g)). Thus, we need not decide whether § 2252(a)(4)(B) could be construed to support multiple possession convictions if such a theory were pleaded and proved. *See Chiarella v. United States*, 445 U.S. 222, 236-37 (1980) (noting that "we cannot affirm a criminal conviction on the basis of a theory not presented to the jury"); *United States v. Mittelstaedt*, 31 F.3d 1208, 1220 (same).

20

or more' items indicates that the legislature did not intend for this statute to be used to charge multiple offenses.").

Further, the statute provides an affirmative defense to "*a* charge of violating [§ 2254(a)(4)]" if the defendant, *inter alia*, "possessed less than three matters containing [prohibited images]." 18 U.S.C. § 2252(c)(1) (emphasis added). Such a defense necessarily contemplates that a person who possessed two matters containing prohibited images would face a single charge of violating § 2252(a)(4)(B).

Finally, the government has pointed to no legislative history suggesting a different view of congressional intent. Without engaging the legislative history directly, the government relies on two unpublished district court decisions from outside this Circuit for the assertion that "'in light of the plain language and legislative history regarding the 1998 amendment, it appears that Congress intended to punish "any" possession of child pornography and that there was no intent to limit any and all possession of child pornography to a maximum of one count under § 2252(a)(4)(B).'" Gov't Br. at 58–59 (quoting *United States v. Flyer*, No. CR 05-1049, 2006 WL 2590459, at *5, 2006 U.S. Dist. LEXIS 64453, at *16 (D. Ariz. Sept. 7, 2006), and citing *United States v. Hamilton*, Civ. No. 07-50054, 2007 WL 2903018, 2007 U.S. Dist. LEXIS 73384 (W.D. Ark. Oct. 1, 2007)). We respectfully do not think that *Flyer* and *Hamilton* are persuasive. That Congress, by its 1998 amendment, intended to prohibit "possession of even one item or image containing child pornography," 144 Cong. Rec. 25239 (1998) (statement of Sen. Hatch), does not indicate that Congress intended to permit separate prosecution and punishment for each such item or image possessed. *See Heflin v. United States*, 358 U.S. 415, 419–20 (1959) ("But in view of the legislative history of [18 U.S.C. § 2113](c) we think Congress was trying to reach a

21

new group of wrongdoers, not to multiply the offense of the bank robbers themselves."); *Prince v. United States*, 352 U.S. 322, 327 (1957) (providing similar analysis).

Having concluded that it was error to enter multiple convictions under § 2252(a)(4)(B), we must assess whether the error is plain and affects substantial rights, and whether we should notice the forfeited error. We find these elements to be met and, therefore, will remedy the error.

"An error is 'plain' if the ruling was contrary to law that was clearly established by the time of the appeal." *Irving*, 554 F.3d at 78 (citing *Johnson*, 520 U.S. at 468). Although our Circuit has not previously held, as we now do, that simultaneous possession of multiple matters containing images of child pornography constitutes a single violation of 18 U.S.C. § 2252(a)(4)(B), that conclusion is demanded by the plain language of the statute and is entirely consistent with Supreme Court and Circuit precedent addressing similar statutes. Therefore, the error in this case is plain. Indeed, we have often found multiple convictions for a single statutory violation to constitute plain error although we had not previously addressed specifically whether the conduct at issue was intended by Congress to be a single statutory violation. *See, e.g.*, *Handakas*, 286 F.3d at 99 ("Because we find no precedential or statutory support for the multiple structuring charges, conviction on two separate counts constituted an 'error' that is 'plain.'"); *Gore*, 154 F.3d at 43; *Coiro*, 922 F.2d at 1014–15; *see also United States v. Miller*, 527 F.3d 54, 73 (3rd Cir. 2008) ("Though we reach this conclusion as a matter of first impression, we do so on the basis of the Supreme Court's holding in *Ball*[ *v. United States*, 470 U.S. 856 (1985)], which is well entrenched in our law and clear in its implications with respect to the double jeopardy question in this case.").

The multiple convictions for possession affect Polizzi's substantial rights because "[t]he

22

separate *conviction[s]*, apart from the concurrent sentence, ha[ve] potential adverse collateral consequences that may not be ignored," *Ball*, 470 U.S. at 865, and each conviction carried with it a special assessment that would not have been imposed absent the erroneously entered convictions. *Rutledge v. United States*, 517 U.S. 292, 301–03 (1996).

Finally, the government has identified no interest of the prosecution or the public, and we can think of none, that would be served by subjecting Polizzi to eleven convictions for possession rather than the single count of conviction authorized by law. Moreover, as discussed below, we are remanding the case on other grounds, which will require resentencing. In these circumstances, we conclude that maintaining these convictions would seriously affect the fairness, integrity, or public reputation of judicial proceedings.

Having concluded that Congress did not intend Polizzi's possession on November 25, 2005, to be punishable with multiple convictions under § 2252(a)(4)(B), we remand this case to the district court to vacate all but one of the § 2252(a)(4)(B) convictions. The district court shall exercise its discretion when determining which conviction should remain. *See Ball*, 470 U.S. at 864.

2. The Receipt Counts

In the event that we vacate the new trial order on the receipt counts, Polizzi urges us to instruct the district court "to enter judgment on a single conviction for receipt *or* a single conviction for possession." This argument has two components: (1) that the conduct charged in the indictment – receiving images on February 20 and March 5, 16, and 20, 2005 – constitutes only a single violation of 18 U.S.C. § 2252(a)(2), so that only one conviction under that section

23

may be entered; and (2) that his § 2252(a)(4)(B) violation is a lesser-included offense of his § 2252(a)(2) violation because receipt necessarily entails possession.

No convictions have been entered under § 2252(a)(2); therefore, the Double Jeopardy Clause's guarantee against multiple punishments for the same offense has not yet been triggered. *See Ball*, 470 U.S. at 859–60, 865 (noting that "the Government may seek a multiple-count indictment . . . for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession," but "[s]hould the jury return guilty verdicts for each count, . . . the district judge should enter judgment on only one of the statutory offenses"); *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) (per curiam).

Nonetheless, in view of the fact that the district court is likely to be faced with these issues on remand, we offer the following observations.

Polizzi's argument that only one receipt conviction may be entered is analyzed in the same way as his argument that only one possession conviction may stand. Thus, with regard to the multiple receipt counts, "the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *Ansaldi*, 372 F.3d at 124 (citing *Bell*, 349 U.S. at 83–84).

Title 18, section 2252(a)(2) of the United States Code, in relevant part, makes it a crime to "knowingly receive[] . . . any visual depiction . . . if . . . the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and . . . such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(2).[6]

---

[6] Title 18, section § 2252A of the United States Code also criminalizes knowingly receiving child pornography. Specifically, that section, in relevant part, makes it a crime to "knowingly receive[] . . . any child pornography . . . [or] any material that contains child pornography." 18 U.S.C. § 2252A(a)(2).

In contrast to the language of § 2252(a)(4)(B), which criminalizes the possession of "1 or more" matters containing prohibited images, the language of § 2252(a)(2), which criminalizes the receipt of "any" prohibited images, is ambiguous as to the intended unit of prosecution. *See Coiro*, 922 F.2d at 1014 ("[T]he word 'any' has 'typically been found ambiguous in connection with the allowable unit of prosecution.'" (quoting *Kinsley*, 518 F.2d at 668)). "Where ambiguity or doubt exists about Congressional intent regarding the unit of prosecution, we apply the rule of lenity, which dictates that 'if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.'" *United States v. Wallace*, 447 F.3d 184, 188 (2d Cir. 2006) (quoting *United States v. Finley*, 245 F.3d 199, 207 (2d Cir. 2001)). Thus, absent evidence of a contrary congressional intent, or an indication that the statutory structure precluded such a result, the rule of lenity requires the conclusion that a person who receives multiple prohibited images in a single transaction can only be charged with a single violation of § 2252(a)(2).

In this case, the indictment alleged, the evidence at trial established, and the jury found that Polizzi received prohibited images on four distinct occasions, that is, on February 20 and March 5, 16, and 20, 2005. But the evidence did not show, and the jury was not asked to determine whether Polizzi's receipt of multiple images on any one of these dates reflected a single simultaneous transfer or discrete and distinct transfers. Such a record would appear to support Polizzi's conviction on four receipt counts – one for each date on which he received images – but not multiple receipt counts per day.

Polizzi's argument that he may not be convicted both for receipt and possession of child pornography requires a slightly different analysis than that employed to assess whether multiple

25

convictions under the same statute may be sustained, although both analyses turn on congressional intent. Where, as here, a defendant has violated two separate criminal statutes, whether the defendant may be punished for both violations turns on "whether the legislature intended to authorize separate punishments for the offensive conduct under separate statutes." *Aparicio v. Artuz*, 269 F.3d 78, 96–97 (2d Cir. 2001); *see also United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999). Thus, "[t]o determine 'whether convictions under separate sections of the federal criminal law arising from the defendant's involvement in a single event or a common series of events violate double jeopardy principles,' we analyze the following three factors: 'the language of the statutes, how those statutes fare under the *Blockburger* test, and express congressional intent, if any, on the issue of multiple punishments.'" *Gore*, 154 F.3d at 44 (quoting *United States v. Muhammad*, 824 F.2d 214, 218 (2d Cir. 1987)). Under the *Blockburger* test, "we determine 'whether there are two offenses or only one [by] whether each provision requires proof of a fact which the other does not.'" *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

Recently, the Ninth and Third Circuits have applied this analysis and concluded that § 2252A(a)(5)(B) (possession of child pornography) is a lesser-included offense of § 2252A(a)(2) (receipt of child pornography), because receiving an item necessitates taking possession of it. *See United States v. Davenport*, 519 F.3d 940, 943–44 (9th Cir. 2008); *Miller*, 527 F.3d at 71–72; *see also United States v. Kamen*, 491 F. Supp. 2d 142, 150 (D. Mass. 2007) (discussing § 2252(a)). Each circuit court concluded, therefore, that the defendant could not be convicted both of receipt and possession under § 2252A. *See Davenport*, 519 F.3d at 943–48; *Miller*, 527 F.3d at 70–74. Our Circuit has not decided this question. *See Irving*, 554 F.3d at 78

26

(assuming without deciding that possession is a lesser-included offense of receiving such pornography under § 2252A). And we need not decide this question with regard to § 2252(a) in this case because although we find the reasoning of *Davenport* and *Miller* persuasive, that reasoning does not apply perfectly to the circumstances of this case. Here, Polizzi was charged with possessing certain images of child pornography the receipt of which do not form the basis for a separate receipt count. Specifically, he was charged in Count Fourteen with possession of one image file (C:\MY Site\Little Sites\MIXEDLOLITAS_files\07.jpg) and in Counts Fifteen, Sixteen, and Seventeen with possession of three video files, but he was not charged with receiving those files. Because Polizzi was not charged with the receipt of these four files, his possession of those files is not merely incident to an act of receiving for which he already has been punished. *See id.* at 77–79 (concluding that no double jeopardy violation would exist so long as the possession conviction was based on an image the receipt of which did not form the basis of the receipt conviction). In such circumstances, it would appear that Congress intended to allow separate convictions.

D. New Trial Motion

The government cross-appeals the district court's order granting Polizzi's Rule 33 motion for a new trial on the receipt counts.

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." This rule "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v.*

27

*Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). "We review the decision of the district court to grant a new trial for abuse of discretion." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001).

The government argues that the district court abused its discretion by granting a new trial because (1) Polizzi had no Sixth Amendment right to have the jury instructed on the applicable mandatory minimum sentence, and (2) the district court was precluded from instructing the jury on the applicable mandatory minimum sentence.

As described more fully below, we conclude that the district court erred to the extent it concluded that Polizzi "ha[d] a Sixth Amendment right to a jury informed of the five-year minimum" that was denied. *United States v. Polizzi*, 549 F. Supp. 2d 308, 438 (E.D.N.Y. 2008); *see also id.* at 446 ("[Polizzi] was denied his Sixth Amendment right to trial by an informed jury."). But we do not conclude, as the government urges, that a district court may never instruct the jury on an applicable mandatory minimum sentence. Rather, without deciding whether it would have been within the district court's discretion to instruct the jury on the applicable mandatory minimum sentence in this case, we find that the district court acted beyond its proper discretion when it ordered a new trial at which the jury would be instructed on the applicable mandatory minimum. The court submitted the case to the jury without instructing the jury on the mandatory minimum sentence, a course that was certainly within its discretion and the jury rendered a verdict upon the error-free trial. Absent a strong justification for redoing a properly conducted trial, the interests of finality, as well as respect for the jury's verdict, counsel against requiring retrial.

<u>1.  Polizzi Had no Sixth Amendment Right to an Instruction on the Applicable Mandatory Minimum Sentence</u>

Our precedent forecloses the conclusion that Polizzi had a Sixth Amendment right to trial by a jury that had been instructed on the applicable mandatory minimum sentence.  *See United States v. Pabon-Cruz*, 391 F.3d 86, 94–95 (2d Cir. 2004).  In *Pabon-Cruz*, we faced circumstances similar to those presented in this case and concluded that the "defendant had no legal right to a charge informing the jury of the sentencing consequences of its decisions."  *Id.* at 94.  The decision was controlled by *Shannon v. United States*, in which the Supreme Court rejected the argument that an instruction on the sentencing consequences of the jury's verdict was "required as a matter of general federal criminal practice."  512 U.S. 573, 584 (1994).  Although the *Shannon* Court "left open the possibility that it might be 'necessary under certain limited circumstances' to instruct a jury regarding the sentencing consequences of its verdict," we concluded that the circumstances in *Pabon-Cruz* were not among the "limited circumstances" in which such an instruction might be required*.  See Pabon-Cruz*, 391 F.3d at 95 (quoting *Shannon*, 512 U.S. at 587).

Courts in this Circuit are bound to apply *Pabon-Cruz* "unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court."  *Consol. Edison Co. v. UGI Utils., Inc.*, 423 F.3d 90, 101 n.12 (2d Cir. 2005).  The district court below concluded that the principles embodied in *United States v. Booker*, 543 U.S. 220 (2005), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Crawford v. Washington*, 541 U.S. 36 (2004), and similar cases "effectively rejected" *Shannon* and *Pabon-Cruz*.  *Polizzi*, 549 F. Supp. 2d at 426–33, 438.  We cannot agree with the district court for two reasons.

First, *Shannon* continues to be controlling precedent.  The district court's conclusion that

29

*Shannon* has been effectively rejected is "less an application of existing precedent than a prediction of what the Supreme Court will hold when it chooses to address this issue in the future." *United States v. Greer*, 440 F.3d 1267, 1275 (11th Cir. 2006). If, as the district court believed, the general principles of *Booker*, *Apprendi*, and *Crawford* will lead the Supreme Court to conclude that the circumstances in which a jury must be informed of an applicable mandatory minimum are not as limited as *Shannon* articulated, that is a decision we must leave to the Supreme Court.[7] *See Hohn v. United States*, 524 U.S. 236, 252–53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Second, *Pabon-Cruz* continues to control because no *intervening* Supreme Court decision undermines the rationale relied on by the panel in that case. The district court concluded that principles drawn from cases like *Booker*, *Apprendi*, and *Crawford* undermine *Pabon-Cruz*. But, of all the cases relied on by the district court, only *Booker* was decided after *Pabon-Cruz*;

[7] Because *Shannon* did not purport to define exhaustively the circumstances in which an instruction on the sentencing consequences of a verdict might be required, it could be argued that *Shannon* does not control directly the question of whether the circumstances of this case required such an instruction. As described below, even if Shannon does not control this case directly, *Pabon-Cruz* continues to control.

*Apprendi* and *Crawford* were decided *prior* to *Pabon-Cruz*. Thus, the panel that decided *Pabon-Cruz* had before it the same principles that we are now urged to find undermine *Pabon-Cruz*. This panel cannot accept an argument that *Pabon-Cruz* was wrongly decided given the Supreme Court's decisions in those cases. Accordingly, applying controlling circuit law, it is clear that Polizzi had no Sixth Amendment right to a jury instruction on the applicable mandatory minimum sentence. *See Pabon-Cruz*, 391 F.3d at 94.

### 2. The District Court Has Discretion to Instruct the Jury on Applicable Mandatory Minimum Sentence in Some Circumstances

The government concedes that neither the Supreme Court nor this Court has "expressly held that a court has no authority to inform the jury of the applicable sentence," but it argues that the principles motivating various Supreme Court and Second Circuit decisions demand the conclusion that a district court may not inform the jury of a mandatory minimum sentence. Specifically, the government draws two principles from court rulings: (1) the Supreme Court's teaching in *Shannon* that the "jury is to base its verdict on the evidence before it, without regard to the possible consequences of the verdict," 512 U.S. at 576, and (2) our disapproval, expressed in *United States v. Thomas*, 116 F.3d 606, 616 (2d Cir. 1997), of any encouragement of jury nullification. The government argues that these two principles are inconsistent with any recognition of district court discretion to instruct the jury as to the consequences of a verdict. In fact, the law does not support such an absolute prohibition.

First, the government's position contradicts the Supreme Court's explicit statements in *Shannon*. Although the *Shannon* Court concluded that "an instruction [on the consequences of a not-guilty-by-reason-of-insanity verdict] is not to be given as a matter of general practice" it also

31

specifically "recognize[d] that an instruction of some form may be necessary under certain limited circumstances." 512 U.S. at 587–88. And elsewhere in *Shannon*, the Court observed: "*[A]s a general matter*, jurors are not informed of mandatory minimum or maximum sentences." *Id.* at 586 (emphasis added). Far from prohibiting all instructions to the jury regarding the consequences of its verdict, these statements make clear that in some, albeit limited, circumstances it may be appropriate to instruct the jury regarding those consequences.

Second, while *Shannon* and *Pabon-Cruz* emphasize that a jury should base its verdict on the evidence, without regard to that verdict's consequences, and *Thomas* stresses the general inappropriateness of jury nullification, these principles do not lead inexorably to the conclusion that a court may *never* instruct the jury on the consequences of its verdict. Without attempting to define the boundaries of a district court's discretion in this regard, we recognize the possibility, as the Court in *Shannon* did, that circumstances may exist in which instructing the jury on the consequences of its verdict will better ensure that the jury bases that verdict solely on the evidence and will better discourage nullification. *Shannon* provided an example of one situation in which an instruction on the consequences of a verdict might be appropriate: "If . . . a witness or prosecutor states in the presence of the jury that a particular defendant would 'go free' if found [not guilty by reason of insanity], it may be necessary for the district court to intervene with an instruction to counter such a misstatement." *Shannon*, 512 U.S. at 587. The *Shannon* Court's reasoning suggests that an instruction might be appropriate in such circumstances because the jury's attention already has been drawn in an unfair and misleading way "toward the very thing – the possible consequences of its verdict – it should ignore." *Id.* at 586.

In this case, it is not necessary to decide whether it would have been within the district

court's discretion to inform the jury of the applicable mandatory minimum sentence. Even assuming *arguendo* that the district court had discretion to give such an instruction, it was certainly within the trial court's discretion to decline to instruct the jury on the mandatory minimum sentence. Once the jury rendered a verdict upon an error-free trial, only a compelling reason involving substantial unfairness could justify undoing the jury's verdict and ordering a new trial.[8] *See United States v. Coté*, 544 F.3d 88, 101 (2d Cir. 2008) ("[C]ourts must . . . exercise Rule 33 authority sparingly and in the most extraordinary circumstances[,] . . . [such as where] a district court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice. . . . [T]he court may not wholly usurp the jury's role." (internal quotation marks omitted)).

Whether circumstances could be imagined in which a trial judge's decision to take some step within its permitted discretion might result in unfair, unforeseen prejudice so as to justify an order for a new trial, in this case, no such justifications were identified. There was no suggestion that the evidence failed to prove Polizzi's guilt, that witnesses against him lied or were mistaken, or that the fairness of his trail was impaired by some error or some untoward prejudicial event. The only justification cited by the district court for the retrial order was that some jurors might have voted for acquittal so as to nullify the application of the harsh sentencing law had they been aware of the mandatory minimum sentence. Based on its post-verdict colloquy with the jurors, the court stated that Polizzi was prejudiced because "it [wa]s apparent that a . . . rational jury [if

---

[8] The circumstance is somewhat different when the order of retrial is occasioned by an error of law which occurred during the trial. Courts of appeals regularly vacate jury verdicts and order retrial by reason of errors of law committed at trial unless they find that the error was harmless. A district court, if it becomes aware of its own error, may well be justified in ordering a new trial without requiring the parties to prosecute an appeal.

informed of the applicable mandatory sentence] would likely have deadlocked on the receiving counts or found Polizzi not guilty by reason of insanity." *Polizzi*, 549 F. Supp. 2d at 448.

Although jurors have the capacity to nullify, it is not the proper role of courts to encourage nullification. *See Thomas*, 116 F.3d at 615. A trial court's failure to take discretionary steps that might have induced jurors to nullify does not furnish an adequate justification for a finding under Rule 33 that "the interest of justice . . . requires" a new trial.

In short, given that the jury rendered its verdict after a trial conducted without error and without any occurrence that risked to prejudice the defendant in the eyes of the jury, the mere fact that jurors advised of the harsh sentencing law might have voted to acquit in an effort to nullify its application did not furnish adequate justification for vacating the jury's verdict and ordering a new trial.

## CONCLUSION

For the foregoing reasons, we VACATE the April 9, 2008 order granting defendant's motion for a new trial and REMAND this case with instructions to the district court to vacate all but one of the § 2252(a)(4)(B) convictions and for further proceedings consistent with this opinion.