STATE of Missouri, Plaintiff–
Respondent

v.

Jesse M. McMEANS, Defendant–
Appellant.

No. 27324.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 21, 2006.

Rosalynn Koch, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Jesse M. McMeans (defendant) was convicted of the Class B felony of child molestation in the first degree. § 566.067.[1] She

1. References to statutes are to RSMo 2000.

appeals asserting that the evidence was not sufficient to prove the offense charged. This court affirms.

■ Defendant waived trial by jury. She was tried by the court.

When a defendant waives trial by jury, the trial court's findings have the force and effect of a jury verdict. *State v. Marshell,* 825 S.W.2d 341, 342 (Mo.App. 1992); Rule 27.01(b). "[A]ppellate review is as though a verdict of guilty has been returned by a jury. If there is substantial evidence to support the findings of the trial court, its judgment is to be affirmed." *State v. Giffin,* 640 S.W.2d 128, 130 (Mo.1982). In its review the appellate court accepts as true the evidence that tends to prove the defendant's guilty and all inferences favorable to the state. Contrary evidence and inferences are disregarded. Id.
*State v. Bigsby,* 891 S.W.2d 160, 161–62 (Mo.App.1995).

Misty Alls is F.G.'s mother. In August 2004 F.G. was 22 months old. Misty was starting a new job. She had known defendant for about three years. She arranged for defendant to baby-sit F.G. during the time she would be working. There did not appear to be a problem the first day defendant babysat. The second day defendant suggested that Misty should buy her an alcoholic beverage; that "[F.G.] was driving her to drink." This concerned Misty. She explained, "[B]ecause [F.G.'s] a very, very good girl. She doesn't really act out or anything like that."

Misty expressed her concerns to her sister-in-law. The sister-in-law suggested that if Misty could not figure out what was wrong with F.G. and why she was acting out, that Misty put a video camera in the house to see if she could determine what was wrong. On September 3, 2004, the third day that defendant babysat, Misty placed a video camera at a location in her residence where it could record what occurred in the area where she expected F.G. and defendant to be. She left the camera running. On that day, another girl who was a few months younger than F.G. was also at the residence. Defendant was to look after both children.

Misty's practice was to call from work to check on F.G. some time each morning. On September 3 she called about 10:30 a.m. Defendant told her that everything was all right; that the girls were playing. About an hour later defendant called Misty and said she could not handle F.G. She told Misty she needed someone to come get F.G. Misty called Darlene Richardet and asked her to pick up the girls. Misty then called defendant and told her Darlene would be coming to get the girls.

Defendant called Misty again "about five to twelve, about twelve o'clock." Misty explained, "[S]he called me back and told me that it wasn't because she couldn't handle [F.G.] that she didn't want to watch her any more, it was because she didn't want a video camera in her face when she was watching her."

Darlene Richardet is F.G.'s grandmother. She got to Misty's residence to pick up the girls about 12:15. When she arrived F.G. came running to her. The other little girl, who Darlene did not know, ran to her and grabbed her leg. Darlene picked up F.G. and noticed her diaper seemed wet. She asked defendant when was the last time she had changed F.G.'s diaper. Defendant said it had been just a little while. Darlene laid F.G. down on a couch to change the diaper. She explained:

And when I did, I went to wipe her off and her vaginal hole and her clitoris was red. And I asked [defendant], I said why is she so red, what happened. She said I don't know, I didn't see anything.

So I finished changing her, and my ex-husband came in, took [the other little girl] out to the car.

Darlene told defendant to wait outside for her ride; that she was locking the house. She told defendant she was not leaving her in the house without anyone there. Darlene left with the children "[s]omewhere between ... 12:30, 12:45."

Darlene was asked if she had seen diaper rash. She stated that she had; that she had changed diapers on her children "[m]any, very many" times. She was asked the following questions and gave the following answers:

Q. Was this redness diaper rash?

A. No.

Q. You said that you observed the red inside the vaginal hole, correct?

A. Yes.

Misty got off work about 2:30 p.m. She picked up F.G. at Darlene's house then went home and viewed the videotape that was in the camera she had left running that morning. After viewing the video recording, Misty called Darlene and had her look at the video. She then took it to a deputy sheriff who lived nearby in Cole Camp.

Misty was asked if she observed any differences in F.G.'s behavior after that morning. She stated that she did. Misty was asked the following questions and gave the following answers:

Q. Would you please describe the difference that you noticed in [F.G.'s] behavior?

A. Well, she didn't really know what her vaginal area was until this incident happened, and then she proceeded to play with herself and fondle herself in that area.

Q. Had she done it before at all?

A. No.

Q. When did you first notice after viewing the tape?

A. When I got home.

Q. Was it the very next time that you saw [F.G.]?

A. Yes, when I brought her home.

Q. And has that passed now?

A. No, it hasn't.

Q. So she's still doing it?

A. Yes.

Misty changed F.G.'s diaper after she picked her up at Darlene's house. She observed that F.G.'s vaginal area "was very red." Misty was asked if she had ever observed diaper rash. She answered that she had; that the redness she observed on F.G. was not diaper rash. Misty was asked if she had stated the redness was inside the vagina. She answered, "Yes." She explained that she could see on the inner parts and outer parts of the child's vagina when she changed her diaper.

After September 3, Darlene babysat with F.G. when Misty went to work. She told the court she had watched F.G. previously; that she changed her diaper whenever she watched her. Darlene explained that after the time she picked up F.G. on September 3, F.G. did not want anyone changing her; that F.G. would "fuss and fidget." There had not been problems with diaper changes before that time.

A videotape was admitted in evidence as an edited tape of the one made at Misty Alls' house on September 3, 2004. It was admitted "by stipulation" without objection. The attorneys explained to the trial judge that a copy was made of "relevant portions" of the videotape recording that had been made the morning of September 3; that it was "basically an edited version of the original tape." The explanation was offered that the entire original tape was in evidence, but that the edited one showed only the two diaper changes, one of F.G.

and one of the other child who was present the morning of September 3.[2]

■ Defendant presents one point on appeal. She argues that the trial court erred in convicting her of child molestation because the evidence was not sufficient "to establish beyond a reasonable doubt that she acted with the purpose of arousing or gratifying [F.G.'s] sexual desire, as the brief touching and wiggling around the genital area of a 22–month old child, who is incapable of sexual arousal, cannot be interpreted as intended to arouse sexual desire."

Section 566.067.1 provides:

A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact.

Section 566.010(3) defines sexual contact as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, *for the purpose of arousing or gratifying sexual desire of any person.*" (Emphasis added.)

■ "The state has the burden and must prove each and every element of a criminal case." *State v. Smith,* 33 S.W.3d 648, 652 (Mo.App.2000). For sexual contact to have occurred, the touching must have been "for the purpose of arousing or gratifying the sexual desire of any person." § 566.010(3). That purpose is an element of the offense of child molestation in the first degree. Defendant's allegation of error contends the state's evidence failed to prove that element.

State's Exhibit No. 1 depicts the conduct that affords the basis for the criminal charge in this case. The state contends defendant's actions in conjunction with changing F.G.'s diaper constituted child molestation in the first degree as defined by § 566.067. That conduct was recorded on the videotape admitted in evidence as State's Exhibit No. 1. In that regard, the circumstances of this case are similar to *State v. Love,* 134 S.W.3d 719 (Mo.App. 2004). The acts for which the defendant in that case was found guilty of three counts of sexual conduct in the first degree, § 566.090, were depicted on a video recording that was in evidence and was part of the record that was before this court. In *Love,* this court acknowledged the unusual aspect of those circumstances, explaining:

The posture of this case is unusual in that possibly the most significant evidence in the case is before this court in the same form as it was before the trial court. The exhibits filed with this court include the videotape recordings of the interactions between defendant and the four children who are deemed the victims in the offenses for which he was found guilty.... With respect to that evidence, as observed in similar circumstances in *Mid–Continent Nat'l. Bank v. Bank of Independence,* 523 S.W.2d 569, 573 (Mo.App.1975), "we enjoy the same coign of vantage to assess credibility as did the trial court, thus the principle of deference does not apply."

*Id.* at 722.

An element of the offense in *Love,* as in this case, was that the act committed was

---

**2.** The videotapes that were admitted in evidence were identified as State's Exhibit No. 1. They were not deposited with this court as directed by Rule 81.16(a). This court entered an order for State's Exhibit No. 1 to be deposited with it. This occurred after some delay. Attorneys representing parties to an appeal should be mindful of the requirements of Rule 81.16 and deposit relevant exhibits with the appellate court as that rule directs. Determination of this appeal was delayed due to the parties' failure to timely comply with requirements of Rule 81.16.

undertaken "for the purpose of arousing or gratifying sexual desire" of a person. Id. This court addressed the method of proof of a person's purpose:

A perpetrator's purpose is ascertained by his or her mental state. "Direct proof of a required mental state is seldom available, and such intent is usually inferred from circumstantial evidence." *State v. Alul,* 948 S.W.2d 215, 218 (Mo. App.1997), citing *State v. Martin,* 882 S.W.2d 768, 770 (Mo.App.1994). In viewing evidence to determine its sufficiency, the same principles apply regardless of whether the evidence reviewed is direct or circumstantial. *State v. Martin, supra.*

*Id.*

Having viewed the evidence that was presented via State's Exhibit No. 1, the videotape recording of defendant changing F.G.'s diaper and a later changing of the diaper of the other child present the day of the alleged offense, this court finds there was sufficient evidence to find defendant committed the acts in question "for the purpose of arousing or gratifying sexual desire of any person," as required by § 566.010(3) in order for there to have been "sexual contact."

The fact statement in defendant's appellant's brief describes what the videotape depicts as follows:

When [defendant] changed [F.G.], she wiped her up and down slowly and carefully three times, then wiggled around her genital area with the wipe. She tossed the wipe and wiggled with her finger. She went over the area with the wipe slowly again, and then appeared to poke with her finger, causing [F.G.] to flinch and kick her legs. [Defendant] then fastened the diaper. [References to index locations on exhibit omitted.]

That description reasonably describes what is depicted on the videotape recording.

Defendant's actions in changing the second girl's diaper differed from her actions in changing F.G.'s diaper. In changing the second girl's diaper, defendant, using a wipe, quickly wiped the genital area of the girl without prodding the vaginal area. She then placed a new diaper on the girl and sent her off to play.

While changing F.G.'s diaper, as described in the state's brief, defendant "wiggled F.G.'s genital area" while using a wipe. After discarding the wipe, defendant then wiggled her fingers around the vaginal area. She then poked F.G.'s vaginal area sufficiently to produce a reaction from F.G. F.G. flinched sharply and raised and kicked with both legs. Whether a 22–month old girl is or is not capable of sexual arousal does not determine the intent of a person who manipulates the child's vaginal area for no other discernable reason. There was sufficient evidence for the trial court to have found, beyond a reasonable doubt, that defendant's manipulation of F.G.'s vaginal area was not innocent contact; that it was intended to sexually arouse the child.

The actions taken in changing the second girl's diaper were sufficiently different from those taken when changing F.G.'s diaper to reinforce the trial court's determination that defendant intended to sexually arouse F.G. regardless of what those acts accomplished. Defendant's point is denied. The judgment of conviction is affirmed.

BATES, C.J., and RAHMEYER, P.J., concur.