The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 3, 2019

## 2019COA100

**No. 15CA2149, *People v. Bott* — Criminal Law — Confessions — Corpus Delicti Rule; Crimes — Sexual Exploitation of a Child; Constitutional Law — Fifth Amendment — Double Jeopardy — Multiplicity**

In this criminal appeal, a division of the court of appeals concludes that the corpus delicti rule, in effect when the defendant allegedly committed the charged offenses, applies at trial because the supreme court's decision abandoning the rule does not apply retroactively. The corpus delicti rule requires that the prosecution present evidence independent of the defendant's confession to establish that a crime occurred.

The defendant was charged with sexually assaulting his newborn daughter in 2004. At the 2015 trial, in addition to the defendant's admission made during sex offender treatment, the prosecution presented evidence that defendant had frequently

changed his daughter's diaper and that, in 2014, he possessed child pornography. The division concludes that the evidence was insufficient to satisfy the prosecution's burden under the corpus delicti rule and therefore vacates the defendant's sexual assault on a child convictions.

The division also interprets the sexual exploitation of a child statute to determine the unit of prosecution for possession of child pornography. Based on the plain language, the division concludes that the unit of prosecution is the act of possession, not the individual image. Accordingly, defendant committed a single offense of possession of more than twenty images, and therefore eleven of his sexual exploitation of a child convictions must be vacated.

COLORADO COURT OF APPEALS                                    2019COA100

Court of Appeals No. 15CA2149
El Paso County District Court Nos. 14CR2153 & 15CR232
Honorable Linda Billings-Vela, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joshua Christian Bott,

Defendant-Appellant.

JUDGMENT AND SENTENCE AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE HARRIS
Richman and Tow, JJ., concur

Announced July 3, 2019

Philip J. Weiser, Attorney General, William G. Kozeliski, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     In 2004, when defendant, Joshua Christian Bott, allegedly molested his infant daughter, Colorado firmly adhered to the "corpus delicti" rule.  That rule requires the prosecution to present evidence other than the defendant's confession to prove that the crime occurred.  By the time of Bott's trial in 2015, the Colorado Supreme Court had abandoned the corpus delicti rule and replaced it with a "trustworthiness" standard.  *See People v. LaRosa*, 2013 CO 2, ¶¶ 31, 38.

¶ 2     At trial, the prosecution introduced Bott's written confession, prepared as part of his sex offender treatment, as well as hundreds of images of child pornography recovered from his computer ten years after the alleged molestation.  The jury convicted Bott of five counts of sexual assault on a child by one in a position of trust, twelve counts of sexual exploitation of a child related to his possession of child pornography, and three additional counts of sexual exploitation related to his distribution of child pornography.

¶ 3     On appeal, Bott argues that the supreme court's decision abandoning the corpus delicti rule in favor of a trustworthiness standard did not apply retroactively; therefore, the prosecution had to present corroborating evidence that the crime occurred and

1

because it did not the evidence was insufficient to support his sexual assault convictions. He also argues that, under the sexual exploitation of a child statute, his single act of possession of hundreds of images of child pornography constitutes one crime of possession of more than twenty items of sexually exploitative material.

¶ 4 We agree with both arguments. Accordingly, we vacate Bott's five convictions for sexual assault on a child and eleven of his convictions for sexual exploitation of a child, and we remand for resentencing.[1]

## I. Background

¶ 5 In 2010, Bott was in sex offender treatment, a condition of the probationary sentence imposed after he pleaded guilty to an unrelated class 6 felony sex offense. At trial, Bott's therapist testified that, to remain in treatment, the client must progress to the satisfaction of the treatment staff. The therapist did not believe that Bott was making sufficient progress in the disclosure phase of treatment because he had not admitted to sexually abusing his

---

[1] Bott does not appeal his conviction for the three counts of sexual exploitation related to distribution of child pornography.

daughter — to the contrary, during the several years he had been in treatment, Bott was "adamant that he did not sexually assault [his daughter]."

¶ 6　　In May 2010, the therapist notified Bott in writing that he was not progressing and that if he failed to complete the disclosure phase by October, he would be terminated from treatment and referred to the court "for consequences," which might include incarceration. By July, Bott had completed a questionnaire in which he admitted that during the six months after his daughter was born in June 2004, he regularly "sexually abused [her] while changing her diaper," by "rubb[ing] [her] vulva and buttocks with [his] fingers." The therapist reported the admission to the police, but they declined to file charges.

¶ 7　　In 2014, after Bott had been terminated from treatment, incarcerated, and released from parole, police received information that Bott's computer was linked to the distribution of child pornography. During a search of Bott's home, police recovered a memory card containing nearly 300 images of child pornography as well as the questionnaire containing his written confession to having sexually abused his infant daughter ten years earlier.

¶ 8    The People charged Bott with five counts of sexual assault on a child, twelve counts of sexual exploitation of a child (each count correlating to possession of more than twenty images of child pornography), and another three counts of sexual exploitation of a child (distribution of child pornography).

¶ 9    At various pretrial hearings, the prosecutor acknowledged that the case was "based off of the treatment notes," and that "the information" it had about the case came from "Mr. Bott's statements." The prosecutor candidly admitted that "there is very little evidence and very little proof in this case."

¶ 10    At trial, the prosecutor introduced (1) Bott's written confession; (2) the therapist's testimony concerning the circumstances surrounding the confession; (3) the ex-wife's testimony that Bott regularly changed their daughter's diaper during the relevant period; and (4) the images of child pornography found on Bott's computer in 2014. The jury convicted Bott of all charges.

II.    Sufficiency of the Evidence — Sexual Assault on a Child

¶ 11    Bott contends that the evidence was insufficient to support his convictions for sexual assault on a child by one in a position of

trust because, under the corpus delicti rule, he could not be convicted based on his confession alone and the prosecution did not present corroborating evidence that the crime occurred.

¶ 12    Bott's challenge to the sufficiency of the evidence raises two questions.  First, did the corpus delicti rule apply at Bott's trial or did the supreme court's decision abandoning the rule apply retroactively?  And second, if the corpus delicti rule did apply, did the prosecution present any corroborating evidence that the crime occurred such that the evidence as a whole was sufficient to sustain the convictions?

### A.    Preservation and Standard of Review

¶ 13    Before we can address the merits of Bott's sufficiency claim, we must determine whether, as the People contend, Bott has waived appellate review of his claim, under either the doctrine of invited error or general waiver principles.

### 1.    Relevant Facts

¶ 14    The corpus delicti rule was first mentioned at the pretrial conference.  The prosecutor explained that she had "two pieces of evidence that show that Mr. Bott was around [his daughter].  One, his admission . . . [a]nd two, [the ex-wife's] testimony."  She

intended to introduce photographs to "show and prove that Mr. Bott was around [his daughter] at that age" and that "he did touch [her]." The photographs were necessary, she argued, even though "corpus delicti is dead in the state of Colorado now, so to speak." Neither defense counsel nor the court responded to the prosecutor's pronouncement.

¶ 15    At the close of the prosecution's case, Bott moved for a judgment of acquittal based on *LaRosa*. Defense counsel noted that in *LaRosa*, the supreme court had abandoned the corpus delicti rule and replaced it with the trustworthiness standard. She explained that *LaRosa* involved similar facts but that the court had not applied the trustworthiness standard to the facts in that case because "there was an ex post facto issue with that specific defendant." Counsel then argued that the prosecution had failed to demonstrate that Bott's confession was trustworthy under *LaRosa*'s new standard. The prosecutor reiterated that *LaRosa* "did away with the corpus delicti rule." She argued that the prosecution had established the trustworthiness of the confession through the ex-wife's testimony that Bott changed the daughter's diaper and the

introduction of the child pornography, which showed that Bott had a sexual interest in young children.

¶ 16　　The trial court denied the motion for a judgment of acquittal. It acknowledged that the supreme court "didn't apply their decision [in *LaRosa*] retroactively"; nonetheless, the court determined that the trustworthiness standard applied in this case and that the standard was satisfied by evidence of Bott's opportunity to commit the crime and of his sexual interests.

### 2.　　Invited Error, Waiver, and Forfeiture

¶ 17　　The People say that by failing to argue the applicability of the corpus delicti rule, and instead focusing exclusively on the trustworthiness standard, Bott is precluded from raising his sufficiency of the evidence claim on appeal. We are not persuaded.

¶ 18　　The doctrine of invited error prevents a party from complaining on appeal of an error that he injected into the case. *People v. Rediger*, 2018 CO 32, ¶ 34. Invited error is a narrow doctrine; it applies to errors in trial strategy but not to errors based on inadvertence or oversight. *Id.*; *see also People v. Stewart*, 55 P.3d 107, 119 (Colo. 2002).

¶ 19      As an initial matter, the prosecutor, not defense counsel, first injected the error in this case. Even so, the People contend, Bott "urged" the trial court to apply the trustworthiness standard and that, under the invited error doctrine, he may not do "an about-face" on appeal and argue that the corpus delicti standard applies. That argument would have some force if Bott had "urged" the trial court to apply one standard over the other as a matter of trial strategy. But it seems clear to us that counsel construed *LaRosa* to preclude reliance on the corpus delicti rule and to require application of the trustworthiness standard. In any event, the trial court was not led astray by counsel's interpretation of *LaRosa*; it independently considered the case, even referring to the language concerning retroactivity.

¶ 20      The People's waiver argument fares no better. Waiver is the "*intentional* relinquishment of a *known* right or privilege." *Rediger*, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). Thus, as a prerequisite to waiver, we must find that the defendant (or his counsel) knew of the right before relinquishing it. The record suggests the opposite: that "everyone involved," *see People v. Tee*, 2018 COA 84, ¶ 31, misunderstood the import or

scope of *LaRosa*'s retroactivity analysis.  There is simply no evidence that Bott "intended to relinquish his right to be tried" in accordance with due process.  *Rediger*, ¶ 42.  Given that we must "indulge every reasonable presumption against waiver," *id.* at ¶ 39 (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)), we conclude that, under these circumstances, counsel did not knowingly and intentionally waive any claim that the corpus delicti rule applied.  *See People v. Ramirez*, 2019 COA 16, ¶ 18 (where counsel's failure to address the error was "patently attributable to neglect," the instructional error was not waived).

¶ 21    We are not persuaded otherwise by the People's citation to *People v. Murray*, 2018 COA 102, and *People v. Kessler*, 2018 COA 60.  In those cases, the divisions assumed that the defendants knew of the error and so focused on the intentionality of the defendants' acquiescence.  *Murray*, ¶¶ 43-44; *Kessler*, ¶¶ 37-38.  *Tee* is distinguishable on other grounds.  There, the division thoroughly analyzed the "knowing" component of waiver and concluded that, while "everyone involved" in the case had correctly assessed the relevant issue and the proper remedy, the defendant

9

had failed to seek any relief in the trial court and thus his claim was waived. *Id.* at ¶¶ 31, 33, 35.

¶ 22　　Still, when the defendant fails to timely assert a right, as Bott did here, we ordinarily consider the claim forfeited and review the claim for plain error. *Rediger*, ¶ 40. Bott's claim involves the sufficiency of the evidence to support the sexual assault convictions, however, and we review sufficiency claims de novo. *McCoy v. People*, 2019 CO 44, ¶ 34.

¶ 23　　Thus, we review de novo whether the prosecution introduced sufficient evidence under the applicable standard to support the sexual assault convictions. If the evidence is insufficient, we must vacate the convictions without conducting a plain error analysis. *Id.* at ¶ 27.

## B. Legal Background

¶ 24　　Almost all courts adhere to a corroboration requirement that prevents a defendant from being convicted of a crime based only on his uncorroborated confession. *LaRosa*, ¶ 13. One such corroboration requirement, known as the corpus delicti rule, requires the prosecution to present independent evidence that the crime occurred. *Id.* at ¶¶ 14-15. The other widely applied

corroboration requirement, known as the trustworthiness standard, requires the prosecution to present independent evidence that the confession itself is trustworthy. *Id.* at ¶ 21.

¶ 25    From 1872 until 2013, Colorado adhered to the corpus delicti rule. *Id.* at ¶ 16. Under that rule, the prosecution must introduce some corroborating evidence to establish (1) an injury that is "penally proscribed — *e.g.,* in an unlawful homicide, a person killed; in larceny, certain property missing," and (2) "unlawfulness of some person's conduct in causing that injury." *People v. Smith*, 182 Colo. 31, 33, 510 P.2d 893, 894 (1973), *abrogated by LaRosa*, ¶ 41; *see also State v. Mauchley*, 67 P.3d 477, 482 (Utah 2003) (corpus delicti rule requires the prosecution to present corroborating evidence that the injury or harm specified in the crime occurred and this injury or harm was caused by someone's criminal activity). The corpus delicti rule was adopted in part to "reduce the possibility that a person is convicted based on a confession to a crime that never happened." *LaRosa*, ¶ 17.

¶ 26    But the corpus delicti rule has some obvious disadvantages, including its potential to obstruct justice in cases where, as in *LaRosa* and as here, "the victim is too young to testify and no

11

tangible injury results from the alleged criminal act." *Id.* at ¶ 27. So in 2013, after carefully considering the benefits and costs of the rule as well as the important role of stare decisis in our legal system, the supreme court decided to abandon the corpus delicti rule and to adopt the trustworthiness standard. *Id.* at ¶¶ 31, 38. The trustworthiness standard "requires corroboration of the confession itself rather than corroboration that a crime was committed." *Mauchley*, 67 P.3d at 488.

¶ 27 Having adopted a new corroboration rule, the court turned to the issue of retroactivity. As a general matter, judicial decisions apply retroactively. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 111 (Colo. 1992). But when a decision alters a common law doctrine of criminal law, and the alteration is unexpected and indefensible by reference to the law in effect at the time of the conduct at issue, retroactive application of the decision violates a defendant's rights under the Due Process Clause. *LaRosa*, ¶ 44; *see also Rogers v. Tennessee*, 532 U.S. 451, 462 (2001). Thus, the "key test in determining whether the due process clause precludes the retrospective application of a judicial decision in a criminal case is whether the decision was sufficiently foreseeable so that the

12

defendant had fair warning." *LaRosa*, ¶ 44 (quoting *Aue v. Diesslin,* 798 P.2d 436, 441 (Colo. 1990)).[2]  The court concluded that because Colorado had consistently applied the corpus delicti rule for more than a century, abandonment of the rule was not foreseeable, and therefore the defendant did not have fair warning. *Id.* at ¶ 46.  Under those circumstances, applying the trustworthiness standard to the defendant would violate his due process rights.  *Id.*

## C.    Analysis

### 1.    Does *LaRosa*'s New Trustworthiness Standard Apply Retroactively to Bott?

¶ 28    The People acknowledge that the *LaRosa* court declined to apply the trustworthiness standard retroactively.  But they argue that the court's retroactivity ruling prohibits application of the new trustworthiness standard only to trials, not to conduct, that occurred before the change in the rule.

---

[2] "Retroactive" and "retrospective" can have different meanings when referring to application of civil statutes, but frequently courts use the terms interchangeably, *see Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6, 11 (Colo. 1993), as the supreme court appeared to do in *People v. LaRosa*, 2013 CO 2, ¶¶ 44, 45.

¶ 29 In determining whether a statute or rule operates "retrospectively" so as to raise ex post facto or due process concerns, the court must ask whether the new statute or rule attaches new legal consequences to events completed before its enactment. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994). The answer to that question depends on "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270. As we understand the People's argument, they contend that because the replacement of the corpus delicti rule with the trustworthiness standard constituted a mere procedural change, operation of the new rule had no connection to the defendant's commission of the underlying criminal conduct but only to his conduct at trial.

¶ 30 To be sure, not all judicial rule changes result in due process violations. *See Proctor v. Cockrell*, 283 F.3d 726, 735 (5th Cir. 2002). "Rather only those 'unexpected and indefensible' judicial changes of the type with which the Ex Post Facto Clause is concerned violate the Due Process Clause." *Id.*; *see also Rogers*, 532 U.S. at 456 ("[L]imitations on ex post facto judicial decisionmaking are inherent in the notion of due process.").

¶ 31    But what are the types of rules with which the Ex Post Facto

Clause and, by extension, the Due Process Clause, are concerned?

In *Calder v. Bull*, 3 Dall. 386, 390 (1798) (seriatim opinion), Justice

Samuel Chase identified them as follows:

> 1st.  Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2nd.  Every law that aggravates a crime, or makes it greater than it was, when committed.  3rd.  Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.  4th.  Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

¶ 32    The People are right that the Ex Post Facto Clause is not

concerned with mere procedural rules, which necessarily fall

outside *Calder*'s four categories.  *See Collins v. Youngblood*, 497

U.S. 37, 46 (1990); *see also State v. Jess*, 184 P.3d 133, 160 (Haw.

2008) ("For a judicial decision to implicate due process concerns,

the change wrought upon the defendant's interests must be

substantive, as opposed to procedural . . . .").

15

¶ 33     But contrary to the People's assertion, the corpus delicti rule is not merely procedural.[3]  The *LaRosa* court itself rejected that argument, observing that it had always treated the corpus delicti rule as a "'substantive rule of law relating to the quantum of proof necessary to sustain a conviction' and not a rule affecting admissibility."  *LaRosa*, ¶ 42 (quoting *People v. Robson*, 80 P.3d 912, 913-14 (Colo. App. 2003)).

¶ 34     To the extent we needed confirmation of the proper characterization of a corroboration rule, *Carmell v. Texas*, 529 U.S. 513 (2000), provides it.  The defendant in that case sexually assaulted his stepdaughter when the law required corroboration of a victim's testimony to convict the offender unless the victim had reported the crime within six months or was younger than fourteen. *Id.* at 516-17.  But by the time of trial, the statute had been amended to permit conviction of certain offenses on the victim's testimony alone.  *Id.* at 516-18.  The question was whether the amendment could be applied at trial for offenses committed before

---

[3] At oral argument, the People appeared to concede that the corpus delicti rule is substantive, not procedural, but did not acknowledge the legal consequence of the distinction.

16

its enactment without violating the defendant's constitutional rights. *Id.* at 516. The answer turned on whether the rule fell within one of the *Calder* categories. The Supreme Court concluded that it did:

> [The amended corroboration rule] is unquestionably a law 'that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.' Under the law in effect at the time the acts were committed, the prosecution's case was legally insufficient and petitioner was entitled to a judgment of acquittal, unless the State could produce both the victim's testimony *and* corroborative evidence. The amended law, however, changed the quantum of evidence necessary to sustain a conviction; under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence. Under any commonsense understanding of *Calder*'s fourth category, [the amended rule] plainly fits.

*Id.* at 530.

¶ 35 Like the corroboration law at issue in *Carmell*, the corpus delicti rule is a sufficiency of the evidence rule. "As such, it does not merely 'regulate the mode in which the facts constituting guilt may be placed before the jury,'" but instead "governs the sufficiency of those facts for meeting the burden of proof." *Id.* at 545

17

(alterations omitted) (citation omitted).  And, as our supreme court recognized, prior to *LaRosa*, a person would not have had fair warning of a change in the rule.  *LaRosa*, ¶ 46.  Thus, both elements of a due process violation are present.

¶ 36     The People counter that Bott could not possibly have relied on the corpus delicti rule in ordering his conduct, beyond devising litigation strategy, and thus he was only entitled to fair warning of the rule change before his trial.  According to the People, Bott could not have known at the time he allegedly abused his daughter or at the time he confessed that no corroborating evidence would later emerge.  But as the People conceded at oral argument, if Bott had falsely confessed to appease his treatment provider, he surely would have known that there was no risk that police would ever uncover corroborating evidence.

¶ 37     In any event, the Supreme Court considered and rejected that argument in *Carmell, see* 529 U.S. at 534, because the Court's "concern with fair notice goes beyond actual reliance," *United States v. Lata*, 415 F.3d 107, 111 (1st Cir. 2005).  As the Court explained, even apart from any claim of reliance, "[t]here is plainly a fundamental fairness interest" in "having the government abide by

the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." *Carmell*, 529 U.S. at 533.

¶ 38    Finally, we have no disagreement with the People's assertion that "criminal conduct is not excused merely on the basis that the defendant did not believe the state would be able to prove the crime in court." But we do not find this assertion helpful to our retroactivity analysis. It seems obvious to us that the Supreme Court was not "excusing" the defendant's conduct in *Carmell* when it determined that retroactive application of the state's new corroboration law would violate his constitutional rights.

¶ 39    For these reasons, we conclude, if it was not obvious from *LaRosa* itself, that the trustworthiness standard cannot be applied retroactively to defendants, like Bott, who committed the alleged offense before the court adopted the new standard.

### 2. Did the Prosecution Present Corroborating Evidence Establishing That the Crime Was Committed?

¶ 40    Under the corpus delicti rule, the prosecution had to present corroborative evidence that a sexual assault occurred. *LaRosa*, ¶ 14. While the corroborative evidence "need only be slight," *id.* at

¶ 15 (quoting *Neighbors v. People*, 168 Colo. 319, 322, 451 P.2d 264, 265 (1969)), "we must tread carefully when evaluating the probative weight of evidence that might provide slight corroboration" because some evidence might indicate guilt without establishing the corpus delicti, *Allen v. Commonwealth*, 752 S.E.2d 856, 860 (Va. 2014).

¶ 41    We review de novo whether the evidence is sufficient to establish the corpus delicti of the crime. *See State v. Pineda*, 992 P.2d 525, 532 (Wash. Ct. App. 2000).

¶ 42    According to the People, the prosecution satisfied its burden by introducing the following evidence to establish the corpus delicti of a sexual assault: (1) the ex-wife's testimony that Bott regularly changed the daughter's diaper in 2004 and (2) the numerous images of child pornography downloaded by Bott in 2014.

¶ 43    That Bott changed his daughter's diaper does not establish that a crime occurred. *See Smith*, 182 Colo. at 33, 510 P.2d at 894 (under the corpus delicti rule, evidence must establish an injury proscribed by a criminal law and unlawfulness of a person's conduct in causing the injury). The ex-wife did not say that she had observed any inappropriate touching or other unusual act by

Bott during the diaper changes. (She did not, for example, corroborate Bott's statement that he had repeatedly rubbed the baby's vulva with his fingers.) *Cf. State v. McMeans*, 201 S.W.3d 117, 121 (Mo. Ct. App. 2006) (the defendant's manner of touching the child during a diaper change was evidence that she had committed sexual abuse of the child). Nor did she testify that her daughter exhibited any physical or emotional manifestation of abuse. *See id.* at 119 (noting that witnesses testified that after the defendant changed the child's diaper, the child's vaginal area "was very red" and the child did not want anyone to change her and "would fuss and fidget"). Rather, the ex-wife testified to facts that are "just as consistent with non-commission of the offense as . . . with its commission." *Allen*, 752 S.E.2d at 860 (quoting *Phillips v. Commonwealth*, 116 S.E.2d 282, 285 (Va. 1960)). Under those circumstances, the "slight corroboration" necessary to establish the corpus delicti "does not exist." *Id.*

¶ 44 At most, the ex-wife's testimony established Bott's *opportunity* to commit a crime. But "the mere opportunity to commit a criminal act, standing alone, provides no proof" of the corpus delicti. *State v. Ray*, 926 P.2d 904, 907 (Wash. 1996).

¶ 45   That leaves only the images of child pornography.  In their brief, the People repeatedly argue that the child pornography "corroborated the defendant's confession."  That may be true, and if we were applying the trustworthiness standard, the outcome might be different.  But as we have explained, the corpus delicti rule requires corroboration that a crime occurred, not corroboration of the confession itself.

¶ 46   We do not see how the recovery of child pornography in 2014 supplies the necessary corroboration that Bott's daughter was sexually assaulted ten years earlier.  According to the People, Bott's possession of the images necessarily transforms his earlier, otherwise innocent conduct into sexual assault, thus establishing that the crime of sexual assault on a child occurred and that the daughter was the victim.  But that is true only if every person who has ever had (or will have in the future) an interest in child pornography is also a child molester and, more specifically, a molester of his own children.  The prosecution did not present any evidence to support that proposition, nor do the People cite any supporting authority in their briefing.

¶ 47    At least two courts have rejected the proposition.  In *State v. Delp*, 178 P.3d 259 (Or. Ct. App. 2008), the defendant solicited a purported fourteen-year-old girl (actually an FBI agent) for sex. After tracing the computer to the defendant, agents obtained a search warrant for his home and recovered a disk containing child pornography.  *Id.* at 260-61.  The defendant later confessed to performing sexual acts on his girlfriend's one-year-old child.  *Id.*

¶ 48    On appeal from his convictions for sodomy and sexual abuse, the defendant argued that the prosecution had failed to satisfy its burden under the state's corpus delicti rule because it had not introduced any corroborating evidence that the crimes had been committed.  *Id.* at 265.  The state pointed to evidence that the defendant had access to the child, child pornography was recovered from his computer, he engaged in sexually explicit online conversations, and a towel discovered in the girlfriend's home corroborated a detail in the confession.  *Id.*

¶ 49    The appellate court reversed the convictions, concluding that none of the evidence offered by the state "tends to demonstrate or gives rise to an inference that the alleged victim was the subject of" the charged offenses.  *Id.* at 266.  As the court explained,

23

> no reasonable juror could infer from
> defendant's possession of child pornography,
> his sexual interest in children, the existence of
> a recently laundered pink towel, and
> defendant's opportunity to commit the crimes,
> that the child was the victim of sodomy or
> sexual abuse, whether those facts are
> considered separately or together.

*Id.*

¶ 50    *State v. Mesot*, No. M200602599-CCA-R3-CD, 2008 WL 732151 (Tenn. Crim. App. Mar. 14, 2008), is also instructive. In that case, the defendant's wife discovered child pornography on the couple's computer and called the police. *Id.* at *1. When police arrived, the defendant consented to a search of his computer but informed the officers that he had "wiped" all the child pornography from the hard drive. Nonetheless, a search uncovered five images in a temporary file. *Id.* Defendant then confessed in writing to having sexually abused his nineteen-month-old daughter. *Id.* at *2. He later admitted to his wife that he had engaged in sexual conduct with the child for six months. *Id.*

¶ 51    The defendant appealed his convictions for child rape, contending that the state had failed to present evidence other than his confession to establish the corpus delicti of the crimes. *Id.* at

*3. The state argued that the fact of the crime was corroborated by the defendant's expressed interest in incest and child pornography and the images of child pornography found on his computer. While the court acknowledged that the corroboration of the corpus delicti may be established solely by circumstantial evidence, it concluded that the state had nonetheless failed to present sufficient corroborating evidence of the crimes:

> The court's finding that the Appellant's "interest in child pornography" independently corroborates the rape of the victim is misplaced. We know of no authority which holds that all persons who have an interest in child pornography are also child rapists. Thus, the finding that the Appellant had an interest in child pornography neither "tends to establish" nor compels the inference that the Appellant committed the crime of rape of a child.

*Id.* at *4.

¶ 52    We acknowledge that under section 16-10-301, C.R.S. 2018, evidence of the defendant's other "relevant" acts is generally admissible in prosecutions of sexual offenses, including for the purpose of proving the corpus delicti of a crime. But it does not follow that any evidence offered pursuant to section 16-10-301 will always be sufficient to prove the corpus delicti of a sexual offense.

25

Conversely, we do not mean to suggest that evidence offered under the statute could never corroborate the corpus delicti of a crime.

¶ 53 We conclude only that, on this record, the evidence of Bott's possession of child pornography, ten years after the alleged offense, even when considered together with the fact that he changed his daughter's diaper, was insufficient to prove the corpus delicti of sexual assault on a child.

¶ 54 Accordingly, the evidence was insufficient to sustain Bott's convictions for sexual assault on a child by one in a position of trust. The convictions must therefore be vacated. *See LaRosa,* ¶¶ 47-48.

### III. Double Jeopardy

¶ 55 During the search of Bott's home, police recovered a single memory card containing 294 images of child pornography. The sexual exploitation of a child statute makes the possession of child pornography a class 5 felony, unless the person possesses more than twenty images, in which case possession of the materials is a class 4 felony. § 18-6-403(5)(b), C.R.S. 2018.

¶ 56 The prosecution charged Bott with twelve counts of possession of more than twenty images of child pornography by dividing the

images from the memory card into separate counts. Bott contends that the sexual exploitation of child statute treats as a single offense the possession of more than twenty images of child pornography. Thus, he argues, his twelve convictions and sentences for possessing 294 images violates his rights under the Double Jeopardy Clause. We agree.

## A.     Standard of Review

¶ 57     We review de novo a claim that multiplicitous convictions violate a defendant's constitutional protection against double jeopardy. *People v. Allman*, 2017 COA 108, ¶ 12 (*cert. granted on other grounds* Mar. 5, 2018).

## B.     Analysis

¶ 58     Multiplicity is the charging of the same offense in several counts, culminating in multiple punishments. *People v. McMinn*, 2013 COA 94, ¶ 19. Multiplicitous convictions are prohibited because they violate the constitutional prohibition against double jeopardy. *Id.*

¶ 59     If a defendant is prosecuted for distinct offenses under the same statute, as Bott was, we ascertain whether the defendant's double jeopardy rights were violated by determining (1) whether the

unit of prosecution prescribed by the legislature permits the charging of multiple offenses and (2) whether the evidence in support of each offense justified the charging of multiple offenses and the imposition of multiple sentences. *People v. Harris*, 2016 COA 159, ¶ 40.

¶ 60    "Unit of prosecution" refers to the extent to which the relevant statute permits the prosecution to separate the defendant's conduct into discrete acts for purposes of prosecuting multiple offenses. *Quintano v. People*, 105 P.3d 585, 590 (Colo. 2005).

¶ 61    To determine the unit of prosecution, we look to the statute. *People v. Arzabala*, 2012 COA 99, ¶ 23.  In construing a statute, we must discern and effectuate the intent of the legislature based primarily on the plain and ordinary meaning of the statutory language. *Id.*

¶ 62    Bott was charged with sexual exploitation of a child under section 18-6-403(3)(b.5) and (5).  Those statutory provisions provide as follows:

> (3) A person commits sexual exploitation of a child if, for any purpose, he or she knowingly:
>
> . . .

(b.5) Possesses or controls any sexually exploitative material for any purpose, except that this subsection (3)(b.5) does not apply to [enumerated persons].

. . . .

(5)(b) Sexual exploitation of a child by possession of sexually exploitative material . . . is a class 5 felony; except that said offense is a class 4 felony if:

(I) It is a second or subsequent offense; or

(II) The possession is of . . . more than twenty different items qualifying as sexually exploitative material.

*Id.*

¶ 63    Under the plain and unambiguous language of the statute, the unit of prosecution is an act of possession, not an individual image. The statute refers to the singular "possession" of sexually exploitative material and instructs that, if "*[t]he* possession" is of more than twenty images, the defendant may be punished more severely.  § 18-6-403(5)(b)(II); *see State v. Liberty*, 370 S.W.3d 537, 552-53 (Mo. 2012) (construing substantially similar statute to mean that "possession of 20 or more proscribed images constitutes a single unit of prosecution"); *see also United States v. Polouizzi*, 564 F.3d 142, 154-55 (2d Cir. 2009) (The unit of prosecution under a

statute prohibiting the possession of "1 or more books, magazines . . . or other matter" containing child pornography is the act of possession, not "each 'matter'" containing an image.).

¶ 64     Citing *People v. Renander*, 151 P.3d 657 (Colo. App. 2006), the People contend that a division of this court "faced the precise question presented in this case and held that each image of exploitative material may be charged as a separate offense." But *Renander* interpreted an earlier version of the statute that did not include the critical language contained in the current iteration of subsection (5)(b). And when a statute is amended, it is presumed that the legislature intended to change the law. *Robles v. People*, 811 P.2d 804, 806 (Colo. 1991).

¶ 65     The *Renander* division analyzed the 2005 version of the statute, which contained the following language:

> The sexual exploitation of a child is a class 3 felony; except that sexual exploitation of a child by possession of sexually exploitative material pursuant to paragraph (b.5) of subsection (3) of this section is a class 1 misdemeanor, but a second or subsequent offense by such possession is a class 4 felony.

§ 18-6-403(5), C.R.S. 2005.

¶ 66      Because the statute did not clearly define the allowable unit of prosecution, the division looked to the term "any sexually exploitative material" in subsection (3)(b.5) and concluded that each discrete item of sexually exploitative material constituted an allowable unit of prosecution. 151 P.3d at 661-62. The division's analysis does not apply to the new version of the statute, however, which clearly delineates the unit of prosecution as each act of possession.

¶ 67      The People contend that construing the statute in this way will lead to absurd results because a person who possesses twenty-one images will face the same consequences as a person who possesses 21,000 images. Even assuming that our construction of the statute gives rise to "undesirable results," the "legislature must determine the remedy. Courts may not rewrite statutes to improve them." *People v. Butler*, 2017 COA 117, ¶ 35 (quoting *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2008)).

¶ 68      And we disagree that our construction of the statute would impermissibly constrain prosecutors' discretionary charging decisions. Prosecutors may continue to make charging decisions at

their discretion, limited only by the statutory unit of prosecution and the prohibition against double jeopardy.

¶ 69     Under the applicable unit of prosecution, Bott's possession of the memory card containing 294 images subjected him to only one conviction under section 18-6-403(3)(b.5), C.R.S. 2018.  The multiplicitous convictions therefore violated Bott's rights under the Double Jeopardy Clause.  Accordingly, we vacate eleven of Bott's convictions and remand for resentencing.  *See People v. Johnson*, 2016 COA 15, ¶ 25 ("In multicount cases, judges typically craft sentences on the various counts as part of an overall sentencing scheme, but when a count is vacated and that scheme unravels, they should have the discretion to reevaluate the underlying facts and sentences on the remaining counts.").[4]

## IV.   Conclusion

¶ 70     Bott's convictions for sexual assault on a child by one in a position of trust and eleven of his convictions for sexual exploitation of a child (possession of child pornography) are vacated.  One

---

[4] Because we remand for resentencing, we do not address Bott's final contention that the mittimus must be corrected to reflect the court's oral sentence on the sexual exploitation of a child counts.

conviction of sexual exploitation of a child (possession of child pornography) and the three convictions of sexual exploitation of a child (distribution of child pornography) are affirmed. The case is remanded to the district court for resentencing.

JUDGE RICHMAN and JUDGE TOW concur.