22CA2210 Peo v Gates 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2210
Larimer County District Court No. 18CR1546
Honorable Susan Blanco, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Mariah Rose Gates,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE PAWAR
Harris and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Mariah Rose Gates, appeals the judgment of conviction entered on jury verdicts finding her guilty of possession of methamphetamine and possession of drug paraphernalia. We affirm.

## I.     Background

¶ 2     Gates and a companion were sleeping in the companion's car when police contacted them. Her companion was arrested on several outstanding warrants. Police searched two backpacks that were on the floor of the car. In one of the backpacks, they found syringes and a white crystalline substance.

¶ 3     Police arrested Gates. She told police that she had additional contraband on her person, and indicated it was in her underwear. Because the arresting officers were all male, they took Gates to the jail to be searched by a female officer.

¶ 4     At the jail, the arresting officers handed Gates over to a female officer who took Gates into a private restroom to conduct the search. The female officer emerged with a glass pipe and two baggies of a substance that eventually tested positive for methamphetamine. The female officer handed the pipe and drugs to the arresting officer, who then booked those items into evidence.

¶ 5    Gates was charged with possession of methamphetamine and possession of drug paraphernalia based on the items found in her backpack and on her person.  At trial, the arresting officer testified about the arrest and described how he had received the items found on Gates' person from the female officer.  But he made clear that he had not been present for the search in the private restroom.

¶ 6    The female officer who conducted the search also testified.  But she could not recall having searched Gates specifically and testified only to her standard practice in conducting such searches.

¶ 7    The jury found Gates guilty of possessing drugs and drug paraphernalia.  In response to special interrogatories, the jury found that she possessed the drugs and paraphernalia found on her person, but not the drugs and paraphernalia found in the backpack.  She was convicted and sentenced accordingly.

¶ 8    Gates appeals.  First, she argues that the trial court erred by admitting the physical evidence found during the search of her person because the prosecution failed to establish a sufficient chain of custody for that evidence.  Second, she argues that the court plainly erred by admitting certain testimony from the prosecution's

forensic chemist.  We conclude that Gates waived the first argument and the second one does not warrant relief.

## II.    Drugs and Pipe Found on Gates' Person

¶ 9    On appeal, Gates argues that the court erred by admitting the items found on her person because the female officer was unable to testify that she found those items on Gates.  We conclude that defense counsel waived this argument at trial.

¶ 10    Waiver is the intentional relinquishment of a known right. *People v. Rediger*, 2018 CO 32, ¶ 39.  It extinguishes error and appellate review of the waived issue.  *Id.* at ¶ 40.

¶ 11    To establish waiver, the record must show that either defendant or defense counsel knew of the right before relinquishing it.  *See People v. Bott*, 2019 COA 100, ¶ 20.  Evidence of this knowledge need not be explicit.  We "infer an intent to waive when the record demonstrates that counsel was aware of the grounds for an objection but failed to raise it."  *People v. Garcia*, 2024 CO 41M, ¶ 46.

¶ 12    That is what happened here.  The record shows, though not explicitly, that defense counsel was aware of the grounds that

would support a chain-of-custody challenge to the admission of this evidence but failed to raise it.

¶ 13    The prosecution admitted the items recovered during the search of Gates' person through the first witness at trial, the male officer who received the items from the female officer. The prosecution first moved to admit the pipe, and defense counsel conducted voir dire on the exhibit.

> [Defense counsel]: Deputy, you indicated you, yourself, did not retrieve this pipe from Ms. Gates' underwear, correct?
>
> [Male officer]: That's correct.
>
> [Defense counsel]: And you were not present in the room when the pipe was removed from her underwear?
>
> [Male officer]: I was in the booking vestibule, and [the female officer] took her to the inmate bathroom, which is in the booking vestibule. I didn't follow her into the bathroom. [The female officer] didn't leave the booking vestibule, though, as she recovered the items.
>
> [Defense counsel]: Okay. I guess maybe I should be a little more clear with my question. You didn't see that pipe come out of Ms. Gates' underwear?
>
> [Male officer]: No. She was allowed to go into the bathroom for her privacy.

[Defense counsel]: Okay. And it was [the female officer] who gave you the pipe after she claims she removed it?

[Male officer]: Yes.

[Defense counsel]: Okay. I don't have anything else.

[Court]: Do you object?

[Defense counsel]: No.

¶ 14 The trial court then admitted the pipe and the prosecution immediately sought to admit the drugs found on Gates. The court asked defense counsel if there was any objection and defense counsel said no without requesting voir dire on the drugs. The court then admitted the drugs as well.

¶ 15 Defense counsel's questions during voir dire made clear that he understood that at that point in the trial the prosecution had presented no testimony from anyone present during the search of Gates' person who could identify the specific items discovered on Gates based on having witnessed the search. Defense counsel clearly thought this was problematic — after the male officer testified that he was not present for the search, defense counsel followed up to emphasize the problem, asking, "You didn't see that

pipe come out of Ms. Gates' underwear?" Yet when offered the chance to object to the admission of the pipe, defense counsel declined.

¶ 16    We recognize that we must indulge every reasonable presumption against waiver. *See Rediger*, ¶ 39. But the only reasonable reading of this record is that defense counsel was aware of the grounds of the chain-of-custody objection to the admission of the pipe and chose not to object. We must therefore conclude that Gates waived the chain-of-custody challenge to the admission of the pipe that she seeks to raise on appeal.

¶ 17    We come to the same conclusion about the chain-of-custody challenge to the admission of the drugs found on Gates. Defense counsel's line of questioning during voir dire concerning the pipe was identically applicable to the drugs found on Gates. Although defense counsel did not separately voir dire the witness about the drugs, they were admitted immediately after the voir dire and admission of the pipe, with defense counsel again saying he had no objection to the admission. Under these circumstances, we must conclude that defense counsel was aware of the chain-of-custody

objection to the admission of the drugs and again chose not to object.  Accordingly, this argument was also waived.

¶ 18    We are not persuaded otherwise by the fact that defense counsel attempted to raise the chain-of-custody issue later at trial. After the evidence had been admitted, the female officer testified that she had no recollection of Gates, the search, or what the search revealed.  Later, after the female officer concluded her testimony and the jury had been released for the evening, defense counsel sought to challenge the admission of the already-admitted pipe and drugs found on Gates.  Defense counsel argued that the female officer was the only person who could properly authenticate the pipe and drugs, and because she was unable to do so, they should not have been admitted.

¶ 19    This argument was too little too late.  Challenges to the admission of evidence must be timely.  CRE 103(a)(1).  Defense counsel's argument was not.  And because the evidence had already been admitted, the trial court could not have provided a meaningful remedy (short of declaring a mistrial, which Gates never requested). *Cf. People v. Valera-Castillo*, 2021 COA 91, ¶¶ 23-25 (holding that an untimely *Batson* claim — raised after the court had dismissed

the entire venire — was unreviewable on appeal because the trial court could not have provided a meaningful remedy).

¶ 20    We therefore conclude that because Gates waived her appellate argument challenging the admission of the pipe and drugs found on her person, we cannot address its merits.

### III.    Forensic Chemist Testimony

¶ 21    Gates argues that the court erred by allowing the forensic chemist who tested the substance found on Gates to testify generally about quality control procedures in her laboratory.  Gates contends that this testimony was either irrelevant under CRE 401 or inadmissible under the CRE 403 balancing test.

¶ 22    Gates did not object to this testimony, and we therefore review it for plain error.  *See Hagos v. People*, 2012 CO 63, ¶ 14.  Plain error must be both obvious and substantial.  *Id.*  A substantial error is one that so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the conviction. *Id.*  We perceive no plain error.

¶ 23    The forensic chemist testified that she performed chemical testing on the substance found on Gates and it tested positive for methamphetamine.  But the challenged part of her testimony came

before that when she was describing the general procedures in her laboratory.

> [Prosecutor]: And when you do your testing and you obtain your results on these items, is there any kind of quality control or review that happens in addition to your analysis of these substances?
>
> [Forensic chemist]: Yes. Every case that I perform in the laboratory is subjected to a — what we refer to as a technical review. So another qualified analyst reviews our notes, our reports, everything involved with the case. And should that pass not only mine but then their scrutiny as well, then the report will be released.

¶ 24   We first reject Gates' argument that this testimony was not relevant. The testimony made it more likely that the positive test results for methamphetamine were reliable. *See* CRE 401 (Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.").

¶ 25   We also reject Gates' CRE 403 argument. CRE 403 provides that even relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. But in her opening brief, Gates does not identify any unfair prejudice that

resulted from this testimony. All she says is that the testimony "allowed the prosecution to introduce irrelevant evidence that bolstered the government's case." As explained above, the testimony was relevant. And all relevant evidence bolsters the prosecution's case — there is nothing *unfairly* prejudicial about that unless the way it bolsters the prosecution's case is improper. Gates does not explain how it was improper here. We therefore reject Gates' CRE 403 argument as skeletal, conclusory, and unsupported by substantial argument. *See People v. Wallin,* 167 P.3d 183, 187 (Colo. App. 2007) (declining to address skeletal arguments presented in a perfunctory or conclusory manner).

## IV.   Disposition

¶ 26      The judgment of conviction is affirmed

JUDGE HARRIS and JUDGE GROVE concur.